**UNITED STATES, Appellee,**

v.

**Jose MALDONADO–ESPINOSA and Carmen Maldonado–Espinosa, Defendants, Appellants.**

**No. 91–2143.**

United States Court of Appeals, First Circuit.

·Heard March 5, 1992.

Decided June 30, 1992.

Juan R. Acevedo Cruz, Hato Rey, P.R., for defendant, appellant Jose Maldonado–Espinosa.

Francisco Acevedo Padilla, Guaynabo, P.R., on brief, for defendant, appellant Carmen Maldonado–Espinosa.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., was on brief, for appellee.

Before BREYER, Chief Judge, FEINBERG,* Senior Circuit Judge, and SELYA, Circuit Judge.

BREYER, Chief Judge.

Jose Maldonado–Espinosa and his sister, Carmen Maldonado–Espinosa, appeal their convictions for possession with intent to distribute sixty kilograms of cocaine. 21 U.S.C. §§ 841(a)(1), 955 and 18 U.S.C. § 2.

* Of the Second Circuit, sitting by designation.

They claim that the district court should have suppressed as evidence the cocaine, two airline tickets, and four luggage claim checks. The district court explained in detail why it denied the motions to suppress. *United States v. Maldonado–Espinosa,* 767 F.Supp. 1176 (D.P.R.1991). We find its conclusions are adequately supported in the evidence and in law, and we therefore affirm the convictions.

## I.

### Background

On February 28, 1991, government agents at Luis Munoz Marin International Airport in Carolina, Puerto Rico, using a drug-sniffing dog, identified four suitcases as probably containing narcotics; identified the Maldonados, who were bound for Miami, as the suitcases' likely owners; detained, handcuffed, and questioned the Maldonados; opened the suitcases and found the cocaine; asked Carmen Maldonado for the airline tickets; and searched for and found the luggage claim checks in Carmen Maldonado's carry-on bag. The key events, as found by the district court and supported in the record, included the following:

1) Customs Officer Raul Diaz was conducting a training session with his accuracy-certified, drug-sniffing dog, Hershel. Hershel was supposed to pick out "dummy" luggage, which Customs agents had filled with narcotics, from ordinary domestic and international luggage on a luggage conveyor belt. Instead, Hershel "alerted" the agents to the presence of drugs, not in the "dummy" luggage but in two other suitcases.

2) Officer Diaz, on the instructions of Juan Hurtado, his supervisor, put the two suitcases through the Department of Agriculture's x-ray machine. The x-ray revealed bulky packages that might contain drugs.

3) Diaz returned with Hershel to the luggage conveyor belt, where Hershel alerted the agents to two more suitcases. The agents x-rayed these as well. They also appeared to be filled with loaf-shaped packages.

4) Hurtado, noting on the luggage tags, names (Castro and Colon), destination (Miami), and airline (American), went to the gate, where an American Airlines agent recalled dealing with a couple named "Castro" and "Colon." She pointed out Carmen Maldonado in the waiting area.

5) Hurtado approached Carmen and asked her for her ticket. She said her brother had it, and that he was in the men's room. She agreed to wait with Hurtado for Jose. When Jose appeared, Hurtado asked if he could see their tickets. Jose said a "man in a yellow shirt" had them. They agreed to accompany Hurtado to the customs area.

6) Carmen and Jose were placed in separate rooms. They revealed their true names (*i.e.,* Maldonado, not "Castro" and "Colon"). The agents handcuffed them to chairs.

7) Another customs agent, Benjamin Garcia, asked Carmen Maldonado for the tickets. She reached into the pocket of a carry-on bag which was on a table near where she was sitting, and she produced them. Garcia then left the room and showed the airline tickets to Hurtado. He returned and ordered a "security search." Inspector Nidia Alvarez conducted the search, which consisted of frisking Carmen Maldonado, and looking into her purse and carry-on bag which were on the table. Alvarez found the luggage claim checks in the carry-on bag.

8) Garcia then directed Special Agent Rodolfo Salcero and Hurtado to interview Jose, and he called Agents Marilyn Garcia and Leticia Cerrano to interview Carmen. Those agents read the Maldonados their *Miranda* rights, obtained signed waivers, and questioned them.

9) Yet another agent, Drug Enforcement Agent Enrique Nieves, arrived and again read Jose his *Miranda* rights. He told Jose that Hershel had alerted

agents to the suitcases, and that the x-rays had revealed loaf-shaped packages. Nieves told Jose that, in his experience, such packages contained drugs and that he would get a warrant and open the suitcases unless Jose consented to their being opened. Jose consented. Nieves told Carmen the same thing. Carmen indicated that she did not care if he opened the suitcases because they did not belong to her. Nieves opened the suitcases and found the drugs.

## II.

### *The Seizure of the Drugs*

 The district court rejected the Maldonados' claim that the government agents acted unreasonably, hence, unconstitutionally, in seizing the drugs. U.S. Const. amend. IV; *see also United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). It reasoned as follows:

(1) Government agents were acting reasonably in using Hershel at the luggage conveyor belt. *See United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983) (dog sniff not a "search"); *United States v. Race*, 529 F.2d 12, 14 (1st Cir.1976) (random dog sniffing of international luggage does not require particularized suspicion). Hershel, a fully trained drug-sniffing dog, alerted the agents to the Maldonados' suitcases; hence, the government had "probable cause" for a search of the suitcases with a proper warrant. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (dog sniff provides probable cause to obtain warrant to search luggage).

(2) The Customs agents did *not* act reasonably (hence they acted unconstitutionally) in taking x-rays of the luggage, rather than simply obtaining a search warrant. *See United States v. $124,570 U.S. Currency*, 873 F.2d 1240, 1244 (9th Cir.1989) (warrantless administrative search of luggage at airport limited to purpose of excluding weapons and explosives from planes).

(3) *But* Jose Maldonado voluntarily consented to the opening of his suitcases, while Carmen Maldonado disclaimed ownership of hers.

(4) *And* the unconstitutional x-ray did not play a significant role in obtaining their consent. *Maldonado–Espinosa*, 767 F.Supp. at 1184–87.

(5) Hence, the search was constitutional. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (consent exception to warrant requirement).

The Maldonados acknowledge that the dog sniff provided sufficient grounds to obtain a warrant. They take issue, however, with points (3) and (4). They say that their "consent and disclaimer" were not "voluntary" because the unconstitutional x-ray played a critical role in obtaining their "consent and disclaimer." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ("fruit of poisonous tree" doctrine).

We have reviewed the record, and we find the district court's findings on these matters adequately supported. The Maldonados correctly state that, at the suppression hearing, they *said* they did not consent to the search or disclaim ownership of the luggage. But they cannot overcome the fact that the district court simply did not believe them. The court accepted as true the government agents' account of those events—that Jose Maldonado specifically consented to the search and that Carmen indicated that the suitcases did not belong to her, and that she did not mind if they were opened. These findings, and the district court's description of the underlying events, accurately represent the contents of the record. *Maldonado–Espinosa*, 767 F.Supp. at 1189–92.

The court (assuming the x-ray search was unconstitutional) also found that the x-ray search played no significant role in obtaining the consent and disclaimer. Rather, in the court's view, the Maldonados consented and disclaimed because they realized that failure to do so would do them no good—the agents would simply obtain a warrant and search the suitcases anyway.

In our view, this is a perfectly plausible conclusion to draw from the record. The district court saw the witnesses; it made appropriate credibility determinations, and we cannot say its conclusions were "clearly erroneous." *United States v. Cruz Jimenez,* 894 F.2d 1, 7 (1st Cir.1990).

■ We do note that the x-ray in this case is rather unusual—it was taken *after* the government already had "probable cause" sufficient to obtain a search warrant. Whether, under such circumstances, the x-ray is or is not a constitutional search, is a matter that the circuit courts have not decided. And, we state explicitly that we do not decide it, for we need not reach the issue. We accept, for purposes of this appeal, the district court's finding that the x-ray played no significant role in obtaining the consent and disclaimer that made the search possible.

### III.

*The Claim Checks and the Plane Tickets*

■ The Maldonados argue that the government unlawfully seized the luggage claim checks. They say that Agent Alvarez searched Carmen Maldonado's carry-on bag without a warrant and in the absence of any exigent circumstances that might have justified a warrantless search. The short, conclusive answer to this argument is that government agents had just arrested Carmen Maldonado. They had probable cause for the arrest (as the Maldonados do not deny). *Florida v. Royer,* 460 U.S. 491, 506, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983); *Race,* 529 F.2d at 14. The carry-on bag was on the table next to her and within reach. And, government agents, when arresting a person, may constitutionally search an arrested person's nearby carry-on bag, without a warrant. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). They may do so whether or not they have reason to fear that the carry-on bag contains a weapon, another threat to their safety, or destructible evidence. *Michigan v. DeFillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) ("The fact of a lawful arrest, standing alone, authorizes a search.").

The Maldonados also argue that the government had discovered that the airplane tickets were in the same carry-on bag as a result of unlawful questioning. They say that, after Carmen Maldonado was taken to the room, Agent Garcia, *before giving her appropriate self-incrimination warnings,* asked her where the tickets were. And, she indicated that they were in the nearby carry-on bag. This questioning, after detention, the Maldonados add, violated Carmen Maldonado's Fifth Amendment rights. *Miranda v. Arizona,* 384 U.S. 436, 444–45, 86 S.Ct. 1602, 1612–13, 16 L.Ed.2d 694 (1966). And, the court should have suppressed any "fruits" of that violation, such as the tickets, and perhaps the claim checks as well. *Wong Sun,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

The problem with the Maldonados' argument, however, is that they made no such argument in the district court. Rather, they argued for suppression on Fourth Amendment grounds alone. Had they made their *Miranda* argument, the government might have explored the matter more fully at the suppression hearing. And, undoubtedly, it would have claimed that, irrespective of Agent Garcia's brief initial questioning, the agents would have found the tickets and claim checks *anyway* during the search of the carry-on bag incident to the arrest. Indeed, the record of the suppression hearing indicates that the government agents would "inevitably" have discovered the tickets and checks without the questioning, in which case they would have been admissible whether or not the questioning violated the *Miranda* rules. *Nix v. Williams,* 467 U.S. 431, 441–44, 104 S.Ct. 2501, 2507–09, 81 L.Ed.2d 377 (1984). We find that the Maldonados waived their *Miranda* claim; we add that, given the record, we believe the waiver works no injustice.

The judgment of the district court is

*Affirmed.*