UNITED STATES, Appellee,

v.

**Miguel GOMEZ–BENABE, Defendant, Appellant.**

**No. 92–1254.**

United States Court of Appeals, First Circuit.

Heard Sept. 10, 1992.

Decided Feb. 5, 1993.

Francisco M. Lopez–Romo with whom Edgar R. Vega Pabon, Hato Rey, PR, was on brief, for defendant, appellant.

Warren Vazquez, Asst. U.S. Atty., with whom Charles E. Fitzwilliam, Acting U.S. Atty., and Jose A. Quiles, Asst. U.S. Atty., Hato Rey, PR, were on brief, for appellee.

Before SELYA, Circuit Judge, ALDRICH, Senior Circuit Judge, and BOYLE,* District Judge.

FRANCIS J. BOYLE, District Judge.

Miguel Gomez appeals from judgments of conviction for the willful, knowing, and unlawful possession with intent to distribute of a controlled substance, in violation of 21 U.S.C. § 841(a)(1); and for importation of a controlled substance into the customs territory of the United States from a place outside thereof, in violation of 21 U.S.C. § 952(a). At trial, appellant, both at the end of the presentation of the government's evidence and again after the jury reached its verdict, moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) arguing that evidence of pretrial photographic identifications should have been suppressed at trial since the identifications were either obtained as the fruit of an illegal arrest or were so suggestive so as to violate appellant's due process right. The district court denied appellant's motion because of appellant's failure to bring his suppression motion before trial as required by Fed.R.Crim.P. 12(b)(3) and (f). The district court further ruled that the pretrial identification procedures did not violate appellant's due process rights. After careful consideration of the record, we *affirm.*

## I. Background

On July 21, 1991, the vessel Eurocolombia arrived in Puerto Rico at the Ponce municipal pier around 7:00 P.M.[1] The Eurocolombia had been under investigation by the United States Customs Service ("Customs") for eight to nine months. As part of an on-going investigation by Customs into narcotics smuggling at the municipal pier in Ponce, Customs enforcement personnel were in the practice of using confidential informants to provide information regarding narcotics transactions. One such confidential informant, a seaman aboard the Eurocolombia, signalled Customs personnel that contraband was on board the ship on this particular night. After seeing the signal, Customs Agent Jose Ruiz boarded the Eurocolombia and contacted the confidential informant.

The confidential informant showed agent Ruiz a locker where a Colombian national named Alfonso had placed five one-kilo packages of cocaine while the Eurocolombia was in port in Colombia. Alfonso had given the confidential informant two telephone numbers and instructed the confidential informant to call the phone numbers when he arrived in Ponce, ask for "Pepe" or "Jose", and arrange for the exchange of the drugs. Although initially frustrated by an out-of-order dockside phone, the confidential informant eventually reached the Puerto Rico contacts around 11:00 P.M. using agent Ruiz's cellular phone. After a series of phone calls, the confidential informant was instructed to meet "Jose" and a friend, who would be waiting in a red Toyota four-by-four vehicle, at the Ponce pier gate to make the exchange. Agent Ruiz already had arranged for surveillance units to be placed in and around the municipal pier area.

---

* Of the District of Rhode Island, sitting by designation.

1. Evidence was presented at trial that this vessel arrives in Ponce just about every ten days.

The confidential informant taped the five kilos of cocaine to his body and walked from the vessel, out of the pier area, and onto Comercio Avenue where he made contact with the red Toyota. Upon entering the vehicle, he found "Jose" in the driver's seat and appellant in the front passenger seat. The vehicle moved to a nearby cash-and-carry where they exchanged $10,000 for the cocaine. After the exchange, the confidential informant exited the vehicle, noted its license plate number, and returned to the ship. At this point, the confidential informant had given no description of the occupants of the Toyota to Customs personnel.

After the confidential informant left the Toyota, the Customs enforcement operation unravelled. Customs surveillance units were supposed to stop the vehicle after the transaction was completed. The red Toyota, however, sped away from the area before Customs agents had an opportunity to detain it. The occupants of the Toyota led agent Ruiz and other Customs agents on a high-speed chase through Ponce which ended in the town of Santa Isabel.

Although agent Ruiz testified that the Customs agents never lost sight of the Toyota, other evidence contradicts his testimony. Apparently, at around 4:30 A.M., Customs agents discovered the abandoned Toyota, which had glanced off a telephone pole and had smashed into the wall of a funeral home near the entrance to Santa Isabel. A search of the vehicle turned up $15.90 in cash, two cellular phones, a revolver holster, and a one-kilo package which field-tested positive for cocaine. Witnesses at the scene told agent Ruiz and Carlos Ruiz, another Customs agent, that the two occupants of the red Toyota fled the vehicle and headed toward town.

While at the scene investigating the car accident, Puerto Rico police officer Juan de Leon received a local police radio report of a person acting strangely at a local bar-restaurant about half a kilometer from the accident scene. Agent Ruiz and officer de Leon went to the bar where the bar owner

told them that a certain stranger appeared nervous and was shaking. The nervous stranger was later identified as appellant Miguel Gomez.

At this point, the officers still had no description of the Toyota's occupants. Appellant did not appear injured and no other evidence linked him to the accident vehicle. Nevertheless, based on the suspect's nervousness and the fact that he was a stranger, appellant was placed under arrest at around 5:15 A.M. and was taken first to the scene of the accident and then to the Customs enforcement office in Ponce.

Following defendant's arrest, two Customs officials questioned the confidential informant aboard the Eurocolombia. First, Customs official Manuel Zurita boarded the vessel and obtained a description of the two occupants of the Toyota from the confidential informant. The confidential informant testified at trial that Zurita's visit took place between 6:00 and 6:30 A.M. Shortly after the first visit, agent Ruiz went to the Eurocolombia and showed the confidential informant two photographs taken of the defendant at the Customs enforcement office following his arrest. Ruiz asked if the person in the photo was the driver of the red Toyota. The confidential informant replied that the person in the photo was the passenger and not the driver. At around 7:30 A.M., shortly after agent Ruiz left the ship, the Eurocolombia departed the port of Ponce with the confidential informant aboard.

Later that morning, at around 9:00 A.M., Officer de Leon received a phone call from a Santa Isabel resident reporting the presence of a stranger in the Paso Seco neighborhood. According to the report, the stranger appeared nervous, wore torn clothes, and had a wound on his forehead. Officer de Leon responded to the report and arrested the stranger who was later identified as Jose Gonzalez. Officer de Leon reported this arrest to agent Ruiz. No evidence indicated that officer de Leon had received a description of Gonzalez prior to his arrest.[2] One week later, on July 29,

2. Jose Gonzalez pled guilty before the trial com-       menced.

1990, the remaining four kilos of cocaine were discovered in the backyard of a home located about twenty-five meters from where the accident had occurred.

On August 2, 1991, ten days after the arrest of the appellant, the Eurocolombia returned to Ponce. At that time, agent Ruiz again met with the confidential informant and showed him two photo arrays each containing six photos. One array contained a photo of appellant and the other contained a photo of Jose Gonzalez. From the photo arrays, the confidential informant identified Miguel Gomez and Jose Gonzalez as the occupants of the red Toyota.

Before trial, appellant filed a motion for discovery pursuant to Fed.R.Crim.P. 16 requesting: (1) names and addresses of all informants which the government was going to use at trial; (2) materials relating to offers of immunity or leniency offered by the government to potential witnesses; and (3) names of the enforcement agents that participated in the surveillance at the Ponce pier. Appellant made no pretrial request, however, to discover documents or photos relating to the pretrial identification procedures within the possession of the government pursuant to Fed.R.Crim.P. 16(a)(1)(C).[3] At trial, following the presentation of its case, the government renewed a prior motion to admit two photo arrays into evidence.[4] Appellant had failed to move to suppress this pretrial identification evidence before trial as required by Fed. R.Crim.P. 12(b)(3) and (f). As a result, it was not until the close of the government's case-in-chief, when the prosecutor renewed his motion to admit the photos, that Gomez first moved to suppress the photos. After

hearing the parties' arguments, the district court admitted the photo arrays into evidence.[5] Appellant objected to the district court's ruling and the government rested its case.

Following the government's case-in-chief, appellant moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29.[6] After the district court denied this motion, the defense rested. Following a jury verdict of guilty as to both counts of the indictment, appellant renewed its Fed.R.Crim.P. 29 motion. The district court denied this motion as well, *United States v. Gomez–Benabe*, 781 F.Supp. 848 (D.P.R.1991), and Miguel Gomez appeals.

## II. Discussion

■ Appellant claims that his constitutional rights were violated because the photo arrays used for pretrial identification were unduly suggestive and the product of an illegal arrest. The record is clear, however, that appellant failed to make a Rule 16 motion requesting discovery of the pretrial identification evidence before trial. Rather, appellant only sought pretrial discovery of the identity of the confidential informant, the identities of the law enforcement agents, and any exculpatory materials in the government's possession. More importantly, appellant also failed to make a Rule 12 motion to suppress the photo identifications before trial. The relevant sections of Fed.R.Crim.P. 12 state:

(b) **Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or

3. The government gave open-file discovery to defendant. However, the parties failed to confirm in writing what was contained in the open-file discovery package. The defendant claims he did not see the photos before trial yet the government claims they were available.

4. Twice during the government's case-in-chief the prosecutor sought to admit the two photospreads into evidence. Both times the court deferred ruling on their admissibility until after appellant had the opportunity to cross-examine the witnesses.

5. The confidential informant also made an in-court identification of defendant at trial.

6. Rule 29(c) provides, in pertinent part:
   (c) Motion after Discharge of Jury. If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7–day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal.

oral at the discretion of the judge. The following *must be raised prior to trial:*

\*      \*      \*      \*      \*      \*

(3) Motions to suppress evidence; or

\*      \*      \*      \*      \*      \*

(4) Requests for discovery under Rule 16. . . .

\*      \*      \*      \*      \*      \*

(f) **Effect of Failure to Raise Defenses or Objections.** Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Fed.R.Crim.P. 12(b)(3) & (f) (emphasis added). When, as here, a defendant has failed to take full advantage of his Rule 16(a)(1)(C) discovery request options, his resulting ignorance of a photo's existence does not excuse him from Rule 12's requirement that motions to suppress be filed early.

■ The plain language of Fed. R.Crim.P. 12(b)(3) & (f) establishes that Gomez waived his right to a suppression hearing by failing to move for such a hearing before trial. *See United States v. Leal,* 831 F.2d 7, 10 (1st Cir.1987). A court may grant relief from this waiver only "for cause shown." *United States v. Mendoza–Acevedo,* 950 F.2d 1, 3 (1st Cir.1991); *United States v. Gomez,* 770 F.2d 251, 253–54 (1st Cir.1985). As we have stated before "the decision to grant or deny relief under Fed.R.Crim.P. 12(f) is committed to the sound discretion of the trial court and should not be disturbed on appeal absent a showing of abuse." *Gomez,* 770 F.2d at 253. We find no such abuse in this case.

Before trial, appellant did not challenge the circumstances surrounding his arrest or the validity of the pretrial photo identification. Appellant made no pretrial suppression motion on either basis. As the district court pointed out, it "had no idea that the pretrial identification procedures might have been the fruits of an illegal arrest and subject to the exclusionary rule or that they had been conducted in such a way as to possibly violate defendant's due process right" until evidence was presented at trial. *United States v. Gomez–Benabe,* 781 F.Supp. 848, 854 (D.P.R.1991).

As a matter of policy, suppression issues should be considered before trial because " 'interrupt[ing] the course of the trial for such auxiliary inquiries impedes the momentum of the main proceeding and breaks the continuity of the jury's attention.' " *Gomez,* 770 F.2d at 253, *quoting Nardone v. United States,* 308 U.S. 338, 342, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). The district judge's decision furthers this sensible and longstanding policy.

Furthermore, there is no legitimate explanation for appellant's delay in filing a suppression motion that would have allowed the district court to grant relief from the waiver.[7] *See United States v. Mendoza–Acevedo,* 950 F.2d 1, 3 (1st Cir.1991). In short, the record is that appellant knew all there was to know about the circumstances surrounding his arrest necessary to bring a motion to suppress. We must agree with the district court's conclusion that "[w]ithout some reason as to why a motion to suppress was not filed, th[e] court c[ould] find no basis for not applying the waiver rule.[8]" *Gomez–Benabe,* 781

---

**7.** At oral argument, appellant claimed that language in a certain FBI report led appellant's trial counsel to believe that at least one of the photo identifications had occurred prior to appellant's arrest and served as a basis for probable cause to make that arrest. Appellant argues that this report discouraged his trial counsel from making a pretrial motion to suppress the photo identification as the fruit of an illegal arrest. The FBI report is not part of the appellate record. The district judge observed that appellant failed to present "any legitimate expla-

nation for his failure to timely move to suppress the evidence." *United States v. Gomez–Benabe,* 781 F.Supp. 848, 854 (D.P.R.1991). In these circumstances, we may not take this belated explanation into account on appeal.

**8.** In fact, codefendant Jose Gonzalez apparently considered the issue as a potential defense. In his motion to continue the trial, codefendant's attorney advised the court of his intention to look into the pretrial identification issue. Gon-

**612**

F.Supp. at 854. It is unnecessary to address the substantive aspects of appellant's arguments concerning the legality of his arrest, since appellant has totally failed to put the matter in issue.

We do not reach the merits of appellant's due process claim that the pretrial photo identifications were unduly suggestive. The district court construed First Circuit precedent "as limiting [appellant's] waiver to challenging the identification procedures on 'fruit of the poisonous tree' grounds." *Gomez–Benabe,* 781 F.Supp. at 856. The district court went on to consider the substance of appellant's due process claim.[9] It is not necessary to make this excursion.

In *United States v. Barletta,* we considered significant the difference between motions to "suppress" and other motions to merely "exclude" evidence. 644 F.2d 50, 54–55 (1st Cir.1981). Generally, motions to "suppress" deal with the operation of the exclusionary rule or " 'police conduct not immediately relevant to the question of guilt.' " *Id.* at 54, *quoting, Jones v. United States,* 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960). The upshot of this distinction is that motions to "suppress" evidence must be brought before trial under Fed.R.Crim.P. 12(b)(3) while other motions to "exclude" evidence may be brought after trial has commenced. *Id.* at 54–55. The district court interpreted *Barletta* as removing from the operation of the Fed.R.Crim.P. 12(f) waiver rule any cases that do not implicate the exclusionary rule. *Gomez–Benabe,* 781 F.Supp. at 856. Pretrial photo identification procedures, however, are "matters of police conduct not immediately relevant to the question of guilt" and are therefore the proper subject of a motion to "suppress" as defined in *Barletta* and governed by the restrictions of Fed.R.Crim.P. 12(b)(3) & (f). *See id.* Appellant's due process claims, therefore, have also been waived.

---

zalez, however, pled guilty before filing any motions.

**9.** The district court ultimately decided that the pretrial photo identification procedures were

### III. Conclusion

By failing to file a motion to suppress the photo identifications before trial as required by Fed.R.Crim.P. 12(b)(3) & (f), appellant waived his right to challenge the admission of the evidence during trial, unless the district court found good cause shown. Here, the district judge did not abuse his discretion in denying appellant relief from the waiver under Fed.R.Crim.P. 12(f). Accordingly, the judgments of conviction are *affirmed.*

not unduly suggestive and denied appellant's due process claim. *Gomez–Benabe,* 781 F.Supp. at 859.