UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1236

 UNITED STATES,

 Appellee,

 v.

 JORGE M. NAVEDO-COLON,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Juan M. Perez-Gimenez, U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Torruella and Selya, Circuit Judges.
 

 

Juan R. Acevedo Cruz for appellant.
 
Jose A. Quiles-Espinosa, Senior Litigation Counsel, with whom
 
Daniel F. Lopez-Romo, United States Attorney, was on brief for
 
appellee. 

 

 June 30, 1993
 

 BREYER, Chief Judge. Jorge M. Navedo Col n
 

appeals from his conviction for unlawfully possessing drugs

with intent to distribute them. 21 U.S.C. 841(a)(1). He

argues that the district court should not have permitted the

government to introduce as evidence about 26 kilograms of

cocaine that government agents took from his suitcase at San

Juan's airport. He says that the agents' search of his

suitcases was warrantless and without his consent. He adds

that, in any event, the search was the "fruit" of a

"poisonous tree," namely an earlier illegal x-ray of the

suitcases. Wong Sun v. United States, 371 U.S. 471, 484-86
 

(1963). We find neither argument convincing.

 The basic facts are the following:

 1. On March 20, 1991, a trained drug-sniffing
 dog alerted customs agents at the San Juan
 airport to the likely presence of illegal
 drugs in several suitcases tagged for a
 flight to New York.

 2. The agents put the suitcases through a
 Department of Agriculture x-ray machine. The
 x-ray revealed several packages within that
 appeared as if they could contain cocaine.

 3. Using the suitcase's luggage tags (bearing
 the name "Luis Garcia"), agents found the
 suitcases' owner, namely the appellant, who
 was sitting in the New York bound airplane,
 which had not yet taken off. The agents
 asked appellant to accompany them off the
 airplane, and soon after arrested him.

 -2-
 2

 4. One of the agents brought appellant to a
 special customs room, about nine feet by nine
 feet in size. He handcuffed one of
 appellant's hands to a chair, and left the
 door open. He gave appellant Miranda
 
 warnings, and then began to question him.

 5. Appellant consented to a search of his hand
 luggage, in which the agent found luggage
 claim checks that matched the suitcase tags.
 Appellant also emptied his pockets, which
 contained identification bearing his real
 name, thereby revealing that the name of
 "Luis Garcia" written on the luggage tag was
 a false name. 

 6. After some time had passed (perhaps a few
 minutes, but certainly less than an hour),
 the agent brought the suitcases into the
 room, told appellant about "the dog search,
 the dog alert" and "the x-ray machine," and
 asked if he could open the suitcases. The
 appellant (who, according to the agent,
 simply said "yes") "shrugged by lifting his
 shoulders as if admitting defeat," which
 action, the district court found, amounted to
 "consent." The agent opened the suitcases
 and found the cocaine.

 Appellant does not now deny that he consented to

the suitcase search; rather, he says that the government

"coerced" this consent. The district court, however, found

to the contrary, and we must affirm this finding unless it

is clearly erroneous. See, e.g., United States v. Cruz
 

Jim nez, 894 F.2d 1, 7 (1st Cir. 1990). According to the
 

record, the appellant was simply questioned by one agent for

less than an hour, after Miranda warnings, in an
 

approximately eighty square foot room with an open door --

 -3-
 3

albeit while appellant was sitting with one hand handcuffed

to a chair. Despite the handcuff, however, these

circumstances fall within the bounds of what courts have

deemed valid and "voluntary" consent. See, e.g., United
 

States v. Watson, 423 U.S. 411, 424 (1976) (custody alone
 

does not demonstrate coerced consent to search); United
 

States v. Arango-Correa, 851 F.2d 54, 57-58 (2d Cir. 1988)
 

(where Miranda warnings given, normal tone-of-voice
 

questioning by several agents over five hours does not

demonstrate coerced consent to search, despite strip

search). Cf. Shriner v. Wainwright, 715 F.2d 1452, 1455-56
 

(11th Cir. 1983), cert. denied, 465 U.S. 1051 (1984) (where
 

Miranda warnings given, handcuffs and ten hours of
 

detention, including five hours of intensive questioning,

does not demonstrate that confession was coerced); Stawicki
 

v. Israel, 778 F.2d 380 (7th Cir. 1985), cert. denied, 479
 

U.S. 842 (1986) (where Miranda warnings given, 5 1/2 hour
 

detention including 1 1/2 hour interrogation did not render

confession coerced). 

 Appellant's second argument -- the "fruit of the

poisonous tree" -- presents a somewhat closer question of

fact, though not of law. As in the very similar case of

United States v. Maldonado-Espinosa, 968 F.2d 101, 103 (1st
 

 -4-
 4

Cir. 1992), cert. denied, 113 S.Ct. 1579 (1993), we will
 

assume without deciding (as did the district court) that the

luggage x-ray was unlawful. If the cocaine proves to be a

"fruit" of that x-ray (i.e., if the x-ray caused appellant
 

to consent to the search), then, given the assumption we

have indulged, the law requires its suppression. Wong Sun,
 

371 U.S. at 484-86.

 We concede that the district court's opinion does

not explicitly deny a causal connection between the x-ray
 

and appellant's consent. Yet that opinion does ask whether

this consent was the "fruit of a poisonous tree."

Furthermore, the opinion found the dog sniffing to be "a

lawful act" which provided "an independent legitimate

reason" for seeking consent. Lastly, it says that "the

government cannot use the x-ray evidence . . . as a basis

for obtaining . . . consent," and that the ("unlawful") x-

ray "results must be suppressed . . . ." Fairly read, the

opinion indicates that the court asked, and answered, the

correct causal question in deciding whether to suppress

evidence of consent.

 We also concede that the factual question was a

close one. On one hand, the agent's telling appellant about

the x-ray suggests that the x-ray might have played a causal

 -5-
 5

role in producing consent. On the other hand, the dog sniff

alone provided the agents with sufficient grounds for

obtaining a search warrant (had they found it necessary to

do so), and for seeking appellant's consent. United States
 

v. Sokolow, 490 U.S. 1, 5 (1989); United States v. Race, 529
 

F.2d 12, 15 (1st Cir. 1976). Given this legal fact, the

combined factors apart from the x-ray search -- the agent's

description of the dog's reaction, the baggage tags linking

appellant to the suitcases, and the discovery of the false

name -- might well have convinced appellant that refusing

consent was pointless, for the bags would be opened

eventually anyway. 

 While the factual question on appeal is close, the

legal question is not. Here again, the law directs the

district court, not this court, to make factual

determinations. How appellant's mind worked at the time --

whether or not the x-ray significantly influenced his

decision to consent -- is one such factual determination.

In light of the evidence presented to the district court, we

cannot find its conclusion to be "clearly erroneous."

Fed.R.Civ.P. 52(a) ("Findings of fact . . . shall not be set

aside unless clearly erroneous, and due regard shall be

given to the opportunity of the district court to judge the

 -6-
 6

credibility of the witnesses"). We therefore reach the same

legal conclusion we reached in Maldonado, which affirmed a
 

district court's determination that an illegal x-ray search

did not play a significant role in obtaining appellant's

consent to search his luggage. There, as here, agents told

appellant about a dog sniff, which by itself could have

induced appellant to accede to the search. And, we affirmed

a district court's determination that it did so. Maldonado,
 

968 F.2d at 103-04. Cf. United States v. Race, 529 F.2d 12,
 

14-15 (1st Cir. 1976) (consent to search of air cargo found

to contain marijuana was not tainted by agent's prior and

arguably illegal inspection of cargo, where dog sniff alone

provided ample motive to seek consent of cargo's owner). In

light of the findings of fact and the legal precedent, the

district court judgment is

 Affirmed. 
 

 -7-
 7