USCA1 Opinion

 

 May 7, 1996 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 95-1240 UNITED STATES OF AMERICA, Appellee, v. JOHN CRUZ, Defendant, Appellant.  ____________________ No. 95-1650 UNITED STATES OF AMERICA, Appellee, v. HUMBERT CARRERAS, Defendant, Appellant.  ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________  ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________  ____________________ Frank D. Inserni for appellant Cruz. ________________ Joseph A. Bondy, with whom Richard A. Canton and Canton & Jasper _______________ _________________ _______________ were on brief for appellant Carreras. Warren V zquez, Assistant United States Attorney, with whom ______________ Guillermo Gil, United States Attorney, Jose A. Quiles-Espinosa, Senior _____________ _______________________ Litigation Counsel, Antonio R. Bazan, Assistant United States ________________ Attorney, and Miguel A. Pereira, Assistant United States Attorney, _________________ were on brief for appellee.  ____________________  ____________________ 2 Per curiam. Appellants Humbert Carreras and John Cruz Per curiam. __________ challenge the district court judgments of conviction and sentence entered against them following their joint jury trial for pos- sessing cocaine with intent to distribute, and for conspiracy. See 21 U.S.C. 841(a)(1), 846 (1994). We affirm.  ___ I I BACKGROUND BACKGROUND __________ Just before noon on September 19, 1993, United States Customs Service Officer Wilfredo Cruz-Col n ("Officer Cruz") and "Jo-Jo," a certified narcotics detection dog, were working the American Airlines "baggage pit" at Luis Mu oz Mar n International Airport ("Airport") in Carolina, Puerto Rico, when Jo-Jo "alert- ed" to the presence of narcotics in a suitcase on a conveyor belt carrying luggage ultimately bound for foreign and domestic airports. Jo-Jo alerted to nine other suitcases within a short time thereafter. All ten bags were bound for New York City aboard American Airlines Flight 678. Several bags bore Carreras' name and address. Other luggage tags designated either Nereida R os-Sol , Mar a Ort z, or Mar a Due o-Ort z, who were traveling with Carreras. Although appellant John Cruz was booked aboard Flight 678 as well, his name did not appear on any baggage tag.  With assistance from American Airlines personnel, Customs agents located Carreras and the three women on Flight 678 as it was preparing to depart for New York. After the four passengers had deplaned, Customs agents examined their boarding passes and quickly looked through Carreras' briefcase. Although 3 all four were detained, and interrogated intermittently over several hours, they did not consent to a search of their suitcas- es or acknowledge possession of any contraband. Nor were they formally placed under arrest. Finally, at around 8:30 p.m., after obtaining a search warrant, government agents discovered approximately 20 kilograms of cocaine in each suitcase. At that point, Carreras was given Miranda warnings and placed under _______ arrest. In due course, Carreras moved to suppress admissions made during his extended detention, as well as the physical evidence seized by Customs. Following a three-day hearing, a magistrate judge recommended suppression of all the challenged evidence except the cocaine seized from the suitcases. The district court later ordered the Carreras admissions suppressed, but declined to suppress the cocaine and the items seized from the Carreras briefcase. United States v. Carreras, 851 F.Supp. _____________ ________ 502, 505-06 (D.P.R. 1994). On September 20, 1994, the district court issued a final scheduling order, setting October 24, 1994, as the trial date and directing that all "[d]ispositive motions, including _________ motions to suppress, . . . be filed not later than October 5, _______ __ ________ _____ _______ _ 1994. There-after they shall not be entertained. See Fed. R. ____ ___________ ____ _____ ___ __ ___________ ___ Cr. P. 12(b)." (emphasis added). On October 5, Carreras' present counsel mailed a second motion to suppress from New York to San ______ Juan, which was not filed with the district court until October _____ _______ 11. The belated motion challenged the legality of the "dog __ 4 sniff" and the practice of commingling domestic and international luggage at the Airport. In accordance with its final scheduling order, the district court declined to consider the second motion to suppress, deeming its claims waived. Trial commenced on October 24, 1994, as scheduled. II II DISCUSSION DISCUSSION __________ A. The Carreras Appeal A. The Carreras Appeal ___________________ Carreras attempts to resuscitate the claims raised in the second motion to suppress, despite the undisputed fact that he failed to comply with the bar date. See McIntosh v. Antonio, ___ ________ _______ 71 F.3d 29, 35-37 (1st Cir. 1995) ("filing" occurs upon receipt by clerk, not upon mailing, per Fed. R. Civ. P. 5(e)); Fed. R. Crim. P. 49(d) (incorporating civil case filing rule). Nor did Carreras either request an extension of the bar date or invoke Criminal Rule 12(f), which explicitly authorizes the district court to grant relief from waiver for cause shown. See Fed. R. ___ Crim. P. 12(f); see also United States v. Nu ez, 19 F.3d 719, ___ ____ ______________ _____ 722-23 (1st Cir. 1994) (noting importance of deciding motions to suppress before trial). Given the failure to present the district court with any reason for the waiver, Carreras' claim that the district ___ ______ court abused its discretion, see United States v. Gomez-Benabe, ___ ______________ ____________ 985 F.2d 607, 611 (1st Cir. 1993), by enforcing its scheduling order and imposing waiver, is utterly frivolous, see id. Accord- ___ ___ ingly, we do not reach the lame arguments first broached on 5 appeal for his "abuse of discretion" claim. Appeal of Sun ______________ Pipe Line Co., 831 F.2d 22, 25 (1st Cir. 1987) (refusing to find ______________ abuse of discretion based on matters never presented to district court), cert. denied, 486 U.S. 1055 (1988).1  1 _____ ______ Carreras also attempts to broach on appeal a Fifth and Sixth Amendment challenge to the jury selection procedures employed below, by arguing that higher income professionals, non- voters, and non-English speaking persons are systematically exempted or excluded from petit jury service in the United States District Court for the District of Puerto Rico. We hold this claim to have been forfeited for failure to interpose a proper  ____________________ 1Moreover, the claims raised in the second suppression motion were frivolous. Cf. United States v. Olano, 507 U.S. 725, ___ _____________ _____ 732-33 (1993) (Criminal Rule 52 contemplates, at threshold, that appellant establish "error"); see also Fed. R. Crim. P. 52(a). ___ ____ First, as Carreras concedes, a "dog sniff" is not a Fourth Amendment "search." See, e.g., United States v. De Los Santos ___ ____ _____________ _____________ Ferrer, 999 F.2d 7, 10 (1st Cir.), cert. denied, 114 S. Ct. 562 ______ _____ ______ (1993). Thus, the government did not need to demonstrate a particularized suspicion to justify Jo-Jo's use in detecting the cocaine inside the Carreras luggage. United States v. Maldonado- _____________ __________ Espinosa, 968 F.2d 101, 103 (1st Cir. 1992), cert. denied, 507 ________ _____ ______ U.S. 984 (1993). Furthermore, Jo-Jo's "alert" to the ten suit- cases bound for New York City provided probable cause for the warrant which authorized the search that disclosed the cocaine. Id. Similarly, the challenge to the second briefcase search ___ fails, since Carreras neither points to any evidence introduced against him as a result of the first cursory search of the briefcase, nor suggests a plausible legal basis for finding that the subsequent seizure of the briefcase and its contents, immedi- ately after he was placed under arrest, was not entirely reason- able under any of several exceptions to the Fourth Amendment warrant requirement. See, e.g., Illinois v. Lafayette, 462 U.S. ___ ____ ________ _________ 640, 645-46 (1983) (inventory search); Chimel v. California, 395 ______ __________ U.S. 752 (1969) (search incident to arrest); Maldonado-Espinosa, __________________ 968 F.2d at 104 (inevitable discovery); see also Wong Sun v. ___ ____ _________ United States, 371 U.S. 471, 487-91 (1963) (declining to suppress _____________ evidence, since attenuated connection between lawless conduct and discovery of evidence dissipated taint).  6 objection below, United States v. Flores-Rivera, 56 F.3d 319, 326 _____________ _____________ (1st Cir. 1995) (refusing relief absent showing of "manifest" or "clear" injustice); see also 28 U.S.C. 1867(a) (1994); United ___ ____ ______ States v. Pion, 25 F.3d 18 (1st Cir. 1994), and substantially ______ ____ foreclosed by our precedent as well. See, e.g., Flores-Rivera, ___ ____ _____________ 56 F.3d at 326 (upholding English-language requirement); United ______ States v. Benmuhar, 658 F.2d 14, 19-20 (1st Cir. 1981) (finding ______ ________ no "systematic" exclusion of professionals), cert. denied, 447 _____ ______ U.S. 1117 (1982); see also United States v. Cecil, 836 F.2d 1431, ___ ____ _____________ _____ 1448-49 (4th Cir.) (non-voters), cert. denied, 497 U.S. 1205 _____ ______ (1988). Finally, we reject the request to vacate Carreras' sentence and remand to the district court to consider an age- based downward departure, since Carreras failed to request a downward departure before the district court. See United States ___ _____________ v. Catucci, 55 F.3d 15, 18 (1st Cir. 1995).2 _______ B. The Cruz Appeal  B. The Cruz Appeal _______________ Appellant Cruz contends that it was error for the district court to deny a pretrial motion for severance under Fed. R. Crim. P. 14, whereby he alerted the court that codefendant Carreras would deny ownership of the suitcases containing cocaine and "point the finger" at Cruz. On appeal, Cruz maintains that his fears were realized because he was unfairly convicted as a result of the antagonistic defenses presented at the joint trial. We review only for manifest abuse of discretion. Flores-Rivera, _____________  ____________________ 2Carreras has withdrawn an "ineffective assistance" claim. 7 56 F.3d at 325.  As we have noted in countless cases, significant benefits derive from joint trials in conspiracy cases involving identical substantive offenses. See, e.g., United States v. ___ ____ _____________ DiMarzo, Nos. 95-1441 & 1442, 1996 WL 159365, at *2 (1st Cir. _______ Apr. 10, 1996). Cruz has not shown that the joint trial either jeopardized a specific trial right or risked an unreliable verdict. See Zafiro v. United States, 506 U.S. 534, 538-39 ___ ______ ______________ (1993) (discussing examples of prejudice). Neither the Carreras closing argument nor the Carreras cross-examination of a govern- ment witness generated a significant risk of unfair prejudice to Cruz. See United States v. Yefsky, 994 F.2d 885, 896-97 (1st ___ ______________ ______ Cir. 1993). The district court properly denied the motion for judgment of acquittal as well. The jury, employing its common sense in evaluating the circumstantial evidence, fairly could conclude, beyond a reasonable doubt, that Cruz knew the suitcases contained cocaine, see United States v. Ortiz, 966 F.2d 707, 711 ___ _____________ _____ (1st Cir. 1992) (equating direct and circumstantial evidence), cert. denied, 506 U.S. 1063 (1993), and that all essential _____ ______ elements of the crimes charged had been duly established, see ___ DiMarzo, 1996 WL 159365, at *4-5 (rejecting "mere presence" _______ defense).  Viewed in the light most favorable to the government, see id. at *4, the evidence showed that Carreras and Cruz were ___ __ close associates who had agreed to meet in Puerto Rico and to 8 transport a large quantity of cocaine to New York City for distribution on the mainland. Cruz played an active role in planning, financing, and carrying out the operation. Among other things, he supplied the ten suitcases in which the cocaine was carried and hired two women in Miami to travel with him to Puerto Rico, assist in checking the ten suitcases at the Airport, and fly on to New York. Cruz and these two female associates met Carreras at the Airport upon their arrival from Miami the day before their scheduled flight to New York City. Later that eve- ning, Cruz guarded the fully-loaded suitcases in Carreras' hotel room while Carreras went out to dinner. Immediately prior to the scheduled flight to New York the next day, Carreras filled out luggage tags and placed bogus agricultural inspection stickers on the cocaine-laden suitcases to circumvent x-ray monitoring at the Airport. Significantly, since his name did not appear on the luggage tags, and he was traveling to New York under an assumed name, Cruz was able to avoid detection at the Airport even though the ten suitcases had been found to contain cocaine.  Finally, even though the trial record plainly discloses that he was afforded effective assistance by able trial counsel at sentencing, Cruz contends that the district court sentenced him in an unconstitutional manner by denying his last-minute request for a continuance of the sentencing hearing to permit new counsel, who apparently was handling other criminal matters against Cruz in Ohio, to represent him at sentencing in this case. The district court did not abuse its discretion by denying 9 the late request for continuance. See United States v. Betan- ___ ______________ ______ court-Arretuche, 933 F.2d 89, 93 (1st Cir.), cert. denied, 502 _______________ _____ ______ U.S. 959 (1991). The district court originally scheduled sentencing for February 3, 1995, but reset it for February 8 after Cruz request- ed a continuance on January 18. Despite this accommodation, for no apparent reason Cruz' stateside counsel failed to appear on February 8, nor did he ever enter an appearance in the case. Instead, at the February 8 sentencing hearing Cruz requested yet another continuance on the ground that his stateside counsel was unavailable. The district court acted well within its discretion in calling a halt to these "cat and mouse" tactics. See United ___ ______ States v. Torres, 793 F.2d 436, 440-41 (1st Cir.), cert. denied, ______ ______ _____ ______ 479 U.S. 889 (1986). The settled principle that the "right of an accused to choose his own counsel cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure" applies in full force here. Betancourt-Arretuche, 933 F.2d at 93 (citation ____________________ omitted). "'Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel,' and would amount to an abuse of [the district court's] discretion." United ______ States v. Brand, No. 94-1350, 1996 WL 121716, at *3 (1st Cir. ______ _____ Mar. 26, 1996) (quoting Morris v. Slappy, 461 U.S. 1, 11-12 ______ ______ (1983)). Cruz was given ample opportunity to secure stateside counsel but failed to explain his failure to do so. Consequent- 10 ly, denial of the second request for continuance, made at the rescheduled sentencing hearing and without any reasonable assur- ance to the district court that further delay was either warrant- ed since able trial counsel was available or likely to ensure the appearance of stateside counsel, was eminently sound.  Affirmed.  ________ 11