USCA1 Opinion

 

 February 9, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 92-1901 UNITED STATES OF AMERICA, Appellee, v. JORGE L. RODRIGUEZ ALVARADO Defendant, Appellant. ________________ ERRATA SHEET The opinion of this Court issued on February 4, 1993, is amended as follows: Cover sheet: "District Judge" should be added after "and ______________ Keeton,*". February 4, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ ____________________ No. 92-1901 No. 92-1901 UNITED STATES OF AMERICA, UNITED STATES OF AMERICA, Appellee, Appellee, v. v. JORGE L. RODRIGUEZ ALVARADO, JORGE L. RODRIGUEZ ALVARADO, Defendant, Appellant. Defendant, Appellant. ____________________ ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ____________________ ____________________ Before Before Torruella and Cyr, Circuit Judges, Torruella and Cyr, Circuit Judges, ______________ and Keeton,*District Judge and Keeton,*District Judge ______________ ____________________ ____________________ Juanita Trevino for appellant. Juanita Trevino for appellant. _______________ Jeanette Mercado R os, Assistant United States Attorney, with Jeanette Mercado R os, Assistant United States Attorney, with _______________________ whom Daniel F. Lopez, United States Attorney, was on brief for appel- whom Daniel F. Lopez, United States Attorney, was on brief for appel- ________________ lee. lee. ____________________ ____________________ ____________________ ____________________ ____________________ *Of the District of Massachusetts, sitting by designation. *Of the District of Massachusetts, sitting by designation. CYR, Circuit Judge. Jorge Rodriguez Alvarado appeals CYR, Circuit Judge. ______________ the judgment of conviction and sentence entered against him on four felony charges arising out of a scheme to counterfeit and distribute one hundred dollar bills, in violation of 18 U.S.C. 371, 471-474 and 2.1 We affirm. I I BACKGROUND BACKGROUND __________ On January 20, 1992, Secret Service agents executed a search warrant at a VCR repair shop in Ponce, Puerto Rico. The warrant was based on information provided by Carlos Gutierrez Borrero. Following his own arrest for distributing counterfeit one hundred dollar bills, Gutierrez had identified the owner of the VCR repair shop, Luis Oliveras Quintana, as the source of the counterfeit obligations. Counterfeit bills in one hundred dollar denominations totaling $392,000 were seized at the shop. After Oliveras was arrested, he agreed to cooperate with the govern- ____________________ 1Appellant was charged with conspiracy to violate 18 U.S.C. 471 and with aiding and abetting violations of 472, 473 and 474. Section 471 criminalizes the false making, forging, coun- terfeiting, or altering of any obligation or other security of the United States, with intent to defraud; 472: the passing, uttering, publishing, or selling, with intent to defraud, of any falsely made, forged, counterfeited, or altered obligation or other security of the United States; 473: the buying, selling, exchanging, transferring, receiving, or delivering, of any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine; 474: printing, photo- graphing, or in any other manner making or executing, any engrav- ing, photograph, print, or impression in the likeness of any such obligation or other security. Section 371 criminalizes con- spiracies to defraud the United States; 2: the aiding and abetting of an offense against the United States. ment. Oliveras advised the agents that appellant was expected to visit the shop on January 21 to collect the cash proceeds from the sale of the counterfeit and to pick up the remainder of the undistributed counterfeit bills. On January 21, under Secret Service surveillance, appellant arrived at the shop and Oliveras handed him a briefcase containing the undistributed counterfeit bills. A Secret Service agent overheard appellant inquiring about "series 11."2 Appel- lant removed three bills from the briefcase, put something in his pocket, then left the shop and placed the briefcase in his vehicle, whereupon he was arrested. Following his arrest, undistributed counterfeit bills were found in the briefcase, three more were removed from his pocket, and a notation bearing the name "Carlos Gutierrez Borrero" was found in his wallet. Oliveras continued to cooperate by providing a state- ment minimizing his own responsibility for the counterfeiting scheme. After failing a polygraph examination, he admitted to a larger role in the counterfeiting scheme. Both statements made by Oliveras were disclosed prior to trial, but appellant was not informed of the polygraph testing or the test results. As a consequence of Oliveras' cooperation, the printing equipment and paraphernalia were seized and appellant and his ____________________ 2The trial testimony explained that "series 11" referred to counterfeit bills which were the best quality imitations, bearing serial numbers ending in "11". 4 four codefendantswere indicted. The otherdefendants pled guilty. At appellant's trial, the government presented testimo- ny that appellant had approached Oliveras with a plan to make and distribute counterfeit one hundred dollar bills and that appel- lant had indicated to Oliveras that he knew people who were interested in purchasing the counterfeit. The evidence indicated that appellant and one Freddie Velez provided the paper for printing the counterfeit bills and, though not present at the actual printing, that appellant expected to share in the profits from the counterfeiting operation. After a three-day jury trial, appellant was convicted on all four counts. He was sentenced to concurrent forty-five month terms on each count. II II DISCUSSION DISCUSSION __________ Sufficiency of the Evidence Sufficiency of the Evidence ___________________________ Appellant seems to assert that the jury verdicts on the three substantive counts cannot stand, as there was no evidence that he was present at the time the counterfeit bills were printed; and that the conspiracy conviction cannot stand, as it was based on "mere presence" at the crime scene on January 21. Under the "offense clause" of section 371, a sustain- able conviction requires proof beyond a reasonable doubt that the defendant conspired to commit the substantive offense which was the object of the unlawful agreement. United States v. Lopez, ______________ _____ 944 F.2d 33, 39 (1st Cir. 1991); United States v. Sanchez, 917 ______________ _______ 5 F.2d 607, 610 (1st Cir. 1990), cert. denied, 111 S. Ct. 1625 ____ ______ (1991). A conviction for aiding and abetting a substantive offense requires proof beyond a reasonable doubt that the defen- dant associated himself with the commission of the substantive offense, participated in it as something he wished to bring about, and sought by his actions to make it succeed. United ______ States v. Ortiz, 966 F.2d 707, 711 n.1 (1st Cir. 1992), cert. ______ _____ ____ denied, 61 U.S.L.W. 3479 (U.S. 1993); United States v. Lema, 909 ______ _____________ ____ F.2d 561, 569 (1st Cir. 1990). Evidence of "mere presence" can sustain neither a conviction for conspiracy, United States v. ______________ Tejeda, 974 F.2d 210, 213 (1st Cir. 1992); United States v. ______ ______________ Ocampo, 964 F.2d 80, 82 (1st Cir. 1992), nor for aiding and ______ abetting, United States v. Clotida, 892 F.2d 1098, 1104-05 (1st _____________ _______ Cir. 1989); United States v. Francomano, 554 F.2d 483, 486 (1st _____________ __________ Cir. 1977). We assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See, e.g., United States v. Figueroa, 976 F.2d 1446, 1459 (1st ___ ____ _____________ ________ Cir. 1992); United States v. Lopez, 944 F.2d 33, 39 (1st Cir. _____________ _____ 1991). The evidence may be entirely circumstantial and need not exclude every reasonable hypothesis of innocence; in other words, the jury may accept any reasonable interpretation of the evi- dence, United States v. Batista-Polanco, 927 F.2d 14, 17 (1st _____________ _______________ Cir. 1991), and we must do the same. 6 The evidence was sufficient to establish beyond a reasonable doubt that appellant knowingly conspired to make, possess, and deliver counterfeit obligations, with intent to defraud the United States, and that he aided and abetted the possession, delivery and printing of counterfeit obligations. The evidence revealed that the five co-conspirators, appellant among them, caused approximately $800,000 in counterfeit obliga- tions to be printed. Appellant not only suggested that Oliveras print the counterfeit obligations but provided the paper, ar- ranged a distribution network, aided and abetted the collection of the illicit proceeds, and personally recovered the undistrib- uted counterfeit bills. The contention that he could not be convicted of conspiracy unless he was at the shop when the bills were printed is as bogus as the bills printed in his absence. "[U]nder a basic tenet of traditional conspiracy theory . . . a conspirator is responsible for acts his or her co-conspirators executed during the existence and in furtherance of the conspiracy." United States v. Sabatino, 943 F.2d 94, 96 (1st Cir. 1991); ______________ ________ Figueroa, 976 F.2d at 1446. Similarly, appellant's convictions ________ for aiding and abetting the printing of the bogus bills were amply supported by the evidence that he initiated the counter- feiting scheme, recruited Oliveras, and provided the paper on which the bills were printed. 7 Evidentiary Rulings Evidentiary Rulings ___________________ Appellant challenges two evidentiary rulings, which we review for abuse of discretion. United States v. Arias-Santana, _____________ _____________ 964 F.2d 1262, 1264 (1st Cir. 1992); United States v. Abreu, 952 _____________ _____ F.2d 1458, 1467 (1st Cir.), cert. denied, 112 S. Ct. 1695 (1992). ____ ______ First, appellant asserts that the district court erred in admitting evidence seized from the shop, consisting of the printing press, lamp, paper, and ink used in the counterfeiting process. He frivolously contends that the seized evidence was not relevant to the charges against him because he was not present at the time the bills were printed. As a founding member, however, appellant was criminally responsible for all acts committed in furtherance of the conspiracy. See Figueroa, ___ ________ 976 F.2d at 1452 (evidence of recorded statements of coconspirat- ors admissible against defendant). Second, appellant claims that the district court erred in excluding, as hearsay, the allegedly exculpatory post-arrest statements of codefendants Velez and Santiago, neither of whom was called to testify at trial. He argues that the statements were admissible as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E). Appellant's argument misses the mark, as Evidence Rule 801(d)(2)(E) applies to coconspirator statements made "during the course and in furtherance of the conspiracy," Fed. R. Evid. 801(d)(2)(E); see also Ortiz, 966 F.2d at 714-15, ___ ____ _____ whereas these statements were made neither during nor in further- ance of the conspiracy. 8 Nondisclosure of Polygraph Testing and Results Nondisclosure of Polygraph Testing and Results ______________________________________________ Appellant claims that the government failed to provide adequate pretrial discovery by withholding the information that Oliveras took and failed a polygraph test. According to appel- lant, knowledge of the failed polygraph would have helped the defense establish that Oliveras lied. We must reverse if the totality of the circumstances indicates that the nondisclosure "'might have affected the outcome of the trial.'" United States _____________ v. Devin, 918 F.2d 280, 289 (1st Cir. 1990), citing United States _____ _____________ v. Agurs, 427 U.S. 97, 104 (1976); Sanchez, 917 F.2d at 618; see _____ _______ ___ also Barrett v. United States, 965 F.2d 1184, 1189 (1st Cir. ____ _______ _____________ 1992). Under all the circumstances, we are satisfied that nondisclosure of the polygraph could not have affected the outcome of the trial. During pretrial discovery, the defense was provided with the two inconsistent statements made by Oliveras. Appellant therefore was well aware that at least one statement was false, at least in part, which plainly enabled the defense to challenge Oliveras' credibility on that ground.3 Thus, evidence of Oliveras' failure to pass the polygraph was cumulative to the inconsistent statements previously introduced in evidence, see ___ Sanchez, 917 F.2d at 618 (nondisclosure of cumulative evidence _______ not material to conviction) (citing cases), especially in view of ____________________ 3Oliveras' initial statement falsely asserted that appellant was almost totally responsible for the counterfeiting scheme. The second statement conceded that Oliveras had a significant role in the conspiracy. 9 the vigorous impeachment to which Oliveras was subjected on cross-examination, see United States v. Shelton, 588 F.2d 1242, ___ _____________ _______ 1248 (9th Cir. 1978), cert. denied, 442 U.S. 909 (1979) ("Im- ____ ______ peachment evidence, even that which tends to further undermine the credibility of the key Government witness whose credibility has already been shaken due to extensive cross-examination, does not create a reasonable doubt that did not otherwise exist when that evidence is cumulative or collateral.") (citations omitted). Finally, after the testimony of Oliveras, during government counsel's direct examination of the agent who interrogated Oliveras, the jury was made aware that Oliveras had failed the polygraph test. The defense in turn inquired about the polygraph on cross-examination of the government agent, but made no request to recall Oliveras. We therefore conclude that the government's imprudent decision to withhold pretrial disclosure of the polygraph testing and results could not have altered these jury verdicts. Variance Variance ________ Although appellant alleges that there was an "impermis- sible variance between the offense as presented to the Grand Jury . . . and the case presented in Court," he identifies no vari- ance. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st ___ ____ _____________ _______ Cir.), cert. denied, 494 U.S. 1082 (1990) (arguments adverted to ____ ______ with no attempt at developed argumentation are deemed waived). Even if the variance claim were not deemed waived, however, we would reject it, as the indictment clearly apprised appellant of 10 the charges against him and the evidence presented at trial was "relevant to and within the scope of the crimes" charged in the indictment. United States v. Sutton, 970 F.2d 1001, 1007 n.8 ______________ ______ (1st Cir. 1992) (no variance where indictment fully apprised defendant of crimes with which he was charged). See United ___ ______ States v. Medina, 761 F.2d 12, 16 (1st Cir. 1985) (same). ______ ______ U.S.S.G. 3B1.1(b) U.S.S.G. 3B1.1(b) ___________________ Finally, appellant challenges the three-level enhance- ment imposed pursuant to U.S.S.G. 3B1.1(b). The district court found that appellant was a "manager or supervisor" of criminal activity involving five or more participants. We review role-in- offense rulings for clear error. United States v. Schultz, 970 _____________ _______ F.2d 960, 963-64 (1st Cir. 1992), cert. denied, 61 U.S.L.W. 3479 ____ ______ (1993); United States v. Panet-Collazo, 960 F.2d 256, 261 (1st _____________ _____________ Cir.), cert. denied, 113 S. Ct. 220 (1992). ____ ______ Section 3B1.1 of the Sentencing Guidelines prescribes offense level enhancements based "upon the size of a criminal organization (i.e., the number of participants in the offense) ____ and the degree to which the defendant was responsible for commit- ting the offense." U.S.S.G. 3B1.1, comment. (backg'd). Section 3B1.1(b) directs an increase in the offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more par- ticipants or was otherwise extensive." Although the terms "manager" and "supervisor" are not defined in the Guidelines, the application notes to section 3B1.1 list seven nonexclusive 11 factors for use in distinguishing a "leadership and organization- al role [for which section 3B1.1 provides a four-level increase if the criminal activity involved five or more participants] from one of mere management or supervision." Id. comment. (n.3).4 ___ The presentence report recommended a four-level in- crease due to appellant's aggravated role as an organizer or leader of a criminal activity involving five participants. In response to defense objections at sentencing, the court declined to adopt the recommendation in the presentence report. The court nevertheless found that three of the seven factors to be used in distinguishing a "leader or organizer" from a "manager or super- visor" were satisfied in the present case: recruitment of accomplices, a substantial role in planning and organizing the offense, and the extensive nature and scope of the illegal activity. The court found in particular that appellant had "seduced" Oliveras into joining the conspiracy and that Oliveras in turn had brought in others, including those who actually printed the counterfeit; that appellant, under an assumed name, purchased the paper on which the counterfeit obligations were printed; and that the illegal activity was extensive as it involved approximately $800,000 in counterfeit obligations. ____________________ 4The factors listed in 3B1.1, comment. n.1 are: the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. 12 There was no clear error in the enhancement of appel- lant's sentence as a "manager or supervisor." The sentencing court explicitly found that appellant played an important role in planning and organizing the offense, which entailed an increased degree of responsibility for the commission of the offense. As this court has noted, the section 3B1.1 enhancement applies if the defendant "exercised some degree of control over others involved in the commission of the crime or he [was] responsible __ __ ___ ___________ for organizing others for the purpose of carrying out the crime." ___ __________ ______ ___ ___ _______ __ ________ ___ ___ _____ United States v. Fuller, 897 F.2d 1217, 1220 (1st Cir. 1990) ______________ ______ (emphasis added); see also United States v. Brown, 944 F.2d 1377, ___ ____ _____________ _____ 1381 (7th Cir. 1991) (same). Finally, we find no clear error, particularly in light of appellant's critical role in recruiting a reluctant Oliveras, a well-known figure in criminal circles, who was indispensable to the conspiracy in that he alone appears to have been able to recruit others capable of printing the counterfeit obligations. See United States v. Pierce, 907 F.2d ___ _____________ ______ 56, 57 (8th Cir. 1990) (recruitment finding "provides strong support for the conclusion that [defendant] played a managerial or supervisory role under 3B1.1(b)"). Affirmed. ________ 13