**UNITED STATES of America, Appellee,**

v.

**Giacomo D. CATUCCI, Defendant, Appellant.**

No. 94–1195.

United States Court of Appeals, First Circuit.

Heard Feb. 6, 1995.

Decided May 24, 1995.

---

**16**

Marcia G. Shein, with whom Nat. Legal Services, Inc., Atlanta, GA, was on brief, for appellant.

Craig N. Moore, Asst. U.S. Atty., with whom Sheldon Whitehouse, U.S. Atty., Providence, RI, was on brief, for appellee.

TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

After a jury returned guilty verdicts against defendant-appellant Giacom D. Catucci on four toxic-waste dumping charges, the district court imposed a twenty-seven month prison sentence and Catucci appealed. Finding no reversible error, we affirm.

**I**

### BACKGROUND

The salient facts are recited in the light most favorable to the verdicts. *United States v. Tuesta–Toro*, 29 F.3d 771, 774 (1st Cir.1994). In 1987, Catucci, then the proprietor of Post Tron Systems, instructed the plant superintendent to obtain cost quotations for removing two PCB-laden electrical transformers from the firm's business premises in Providence, Rhode Island. The cost estimates ranged between $8,000 and $10,000 per unit. Years later, in June 1991, Post Tron Systems' lending bank conducted an environmental audit and specifically informed Catucci that the two transformers containing PCBs would have to be removed in accordance with Environmental Protection Agency

("EPA") regulations. Shortly thereafter, Post Tron went out of business.

During the course of subsequent renovations to the business facilities, Catucci arranged for Manuel Almeida and Timothy Arcaro to remove a conveyor belt system. As compensation, Almeida and Arcaro were to retain the salvageable scrap metal—approximating $40 per day in value—recovered in the course of the renovations. Almeida and Arcaro later offered to remove all five transformers at the site, including the two PCB-laden ones, in return for the right to retain the salvage value of their copper coils. Although the plant superintendent reminded Catucci that scrapping the transformers would be against the law, Catucci nevertheless granted permission, stating to the superintendent: "If [Arcaro] wants them, he can have them all."

A few months later, Almeida, Arcaro and a third individual—David Dellinger—removed two units, including one of the PCB-laden transformers, after loosening their lids and thereby causing oil to leak onto local streets and I-95 during transportation. At a secluded gravel pit, the remaining oil was dumped, the copper coils were removed and the transformers were abandoned. The next day, the men repeated the process with the three remaining units—one containing PCBs.

More than a year later, while investigating David Dellinger, the Rhode Island Department of Environment Management ("DEM") discovered the PCB-laden oil that had been dumped from the Post Tron transformers. A few weeks later, the DEM executed a search warrant at the former Post Tron facility. On the following day, Catucci informed the Providence Police Department that the transformers had been stolen. Not until several months after Arcaro and Almeida were arrested for stealing the transformers did Catucci admit to having allowed them to remove the transformers. Even then he claimed that they had been told to dispose of the transformers lawfully.

Thereafter, Catucci was charged, in two counts, with causing unlawful disposal of PCBs in violation of 15 U.S.C. § 2615(b) and, in two additional counts, with failing to provide immediate notification of a release of hazardous materials, in violation of 42 U.S.C. § 9603(b). Following his conviction on all counts, Catucci was sentenced to twenty-seven months.

## II

### DISCUSSION

#### A. *Sufficiency of the Evidence*

On appeal, Catucci claims that there was insufficient evidence that he knew the two PCB-laden transformers would be disposed of illegally, an essential element in each offense charged. *See* 15 U.S.C. § 2615(b) (establishing criminal sanctions for knowingly *or* willfully violating EPA dumping regulations); 42 U.S.C. § 9603(b) (establishing criminal sanctions against any person for failing to notify appropriate government agency of release "as soon as he has knowledge of such release"); *United States v. Buckley*, 934 F.2d 84, 89 (6th Cir.1991); *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098 (9th Cir.1985) (Kennedy J.) (§ 2615); *United States v. Ward*, 676 F.2d 94, 97 (4th Cir.) (same), *cert. denied*, 459 U.S. 835, 103 S.Ct. 79, 74 L.Ed.2d 76 (1982).

Under the established standard of review set out in the margin,[1] we find ample evidence to support the essential jury findings that Catucci knew Almeida and Arcaro would dump the PCBs unlawfully, and that he did not provide timely notice to governmental authorities.

First, the evidence at trial demonstrated that Catucci had been informed, by his plant superintendent, that lawful disposal of each

---

1. We assess the sufficiency of the evidence as a whole, including all reasonable inferences, in the light most favorable to the verdict, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. We do not weigh witness credibility, but resolve all credibility issues in favor of the verdict. The evidence may be entirely circumstantial, and need not exclude every reasonable hypothesis of innocence; that is, the fact finder may decide among reasonable interpretations of the evidence.
*United States v. Hahn*, 17 F.3d 502, 506 (1st Cir.1994).

PCB-laden transformer would cost between $8,000 and $10,000, since EPA regulations required that they be incinerated. As Almeida and Arcaro were willing to remove the transformers in return for the salvage value of their copper coils, the jury assuredly could infer that Catucci was well aware that the two PCB-laden transformers were not going to be incinerated—at a total minimum cost of $16,000—by volunteers who would receive only their scrap value in return. *See United States v. Tejeda*, 974 F.2d 210, 213 (1st Cir. 1992) (noting that jurors may evaluate evidence in light of "their experience as to the natural inclinations of human beings"). Second, Catucci subsequently misrepresented that the transformers had been stolen, which permitted the jury to infer consciousness of guilt. *See United States v. Passos–Paternina*, 918 F.2d 979, 985 (1st Cir.1990) (jury may construe knowingly false statement as evidence of consciousness of guilt), *cert. denied*, 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 732 and *cert. denied*, 501 U.S. 1210, 111 S.Ct. 2809, 115 L.Ed.2d 981 (1991).

### B. Adjustment for Repetitive Discharge

■ Catucci assigns error in the net four-level upward adjustment the sentencing court made pursuant to U.S.S.G. § 2Q1.2(b)(1)(A), which states:

> If the offense resulted in an ongoing, continuous, or repetitive discharge, release or emission of a hazardous or toxic substance or pesticide into the environment, increase by 6 levels.

Catucci argues that it was mere happenstance that the two PCB-laden transformers were dumped on different days. Consequently, he contends, absent evidence that he intended repetitive discharges the district court misapplied the repetitive discharge adjustment. We discern no error.[2] After adopting a six-level *upward adjustment* under U.S.S.G. § 2Q1.2(b)(1)(A), the district court invoked Application Note 5 as authority for a two-level *downward departure*, resulting in a net upward adjustment of four levels. Application Note 5 expressly states that the district court is invested with authority to make "a departure of up to two levels in either direction" depending upon the quantity and duration of the discharge and the nature of the harm caused by it. U.S.S.G. § 2Q1.2, comment. (n. 5).

U.S.S.G. § 2Q1.2(b)(1)(A) is triggered if the offense *resulted in* an ongoing, continuous or repetitive discharge. Catucci concedes that the two PCB-laden transformers were dumped on separate occasions. Nothing more need be shown to activate the repetitive discharge adjustment. *See United States v. Liebman*, 40 F.3d 544, 550 (2d Cir.1994) (repetitive discharge adjustment under § 2Q1.2(b)(1)(A) warranted where defendant had untrained workers remove hazardous material from factory, and workers unlawfully dumped material on several different days); *United States v. Strandquist*, 993 F.2d 395, 401 (4th Cir.1993) (analogous upward adjustment under § 2Q1.3(b)(1)(A) for repetitive discharge triggered by establishing second discharge).

### C. Aberrant Behavior

■ Catucci urges a remand for resentencing because the district court allegedly misapprehended its authority to depart downward on the ground that these offenses constituted "aberrant behavior." *See United States v. Russell*, 870 F.2d 18, 20 (1st Cir. 1989) (adverting to guideline relating to "aberrant behavior" departures).

■ At sentencing, the district court repeatedly indicated its readiness to allow a principled downward departure. Yet despite the district court's specific invitation ("Do you see anything ... which would authorize my departure in this case in a justifiable and reasonable manner?") and its apparent displeasure at having to impose a prison sentence on a person "who may have had an aberration," no "aberrant behavior" claim was presented to the district court. In these stark circumstances, a finding of waiver is virtually compelled. *Cf. United States v. Montoya*, 967 F.2d 1, 2 (1st Cir.1992) (sentencing claim not presented to district court deemed waived), *cert. denied*, —— U.S. ——, 113 S.Ct. 507, 121 L.Ed.2d 442 (1992); *Unit-*

---

2. Guideline interpretations are reviewed *de novo*, whereas relevant factual findings are reviewed for clear error and their application under the guideline is accorded due deference. *See United*

*States v. Ovalle–Marquez*, 36 F.3d 212, 221 (1st Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 947, 130 L.Ed.2d 891, and *cert. denied*, —— U.S. ——, 115 S.Ct. 1322, 131 L.Ed.2d 202 (1995).

*ed States v. Dietz,* 950 F.2d 50, 55 (1st Cir. 1991); *United States v. Rosalez–Cortez,* 19 F.3d 1210, 1220 (7th Cir.1994) (failure to raise "aberrant behavior" claim in district court results in waiver).[3]

### D. *Criminal Rule 32*

■ Catucci contends that resentencing is necessary because the district court failed to comply with Rule 32(c)(3)(D), which provides that, as to any alleged "factual inaccuracy in the presentence investigation report," the district court is to "make (i) a finding as to the allegation or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing." A "written record" of the sentencing court's findings is required. *United States v. Savoie,* 985 F.2d 612, 620 (1st Cir. 1993).

Catucci argues that the sentencing court failed to address the following claim that he be allowed a downward adjustment as a "minor or minimal" participant:

> ... you could make a downward departure based upon a role as a minor in the offense or ... a minimal role in that offense and in—in the whole case, if you believe the jury's decision, they were told that I gave permission to take the transformers.
>
> No one ever said that I told them to dispose of the transformers or I gave permission to dump the transformers. They said they allege that they asked me for permission to take the copper from the transformers and that's the worst of the

testimony from that perspective, so I just raise that issue.

Later in his allocution, after Catucci had asserted his innocence, the district court cautioned that it could not disregard the jury verdicts.[4] The district court ruling rejecting a downward adjustment under U.S.S.G. § 3B1.2 is not challenged on appeal.

■ Catucci's claimed entitlement to a downward "departure" under U.S.S.G. § 3B1.2, notwithstanding the central jury finding that he knowingly allowed Arcaro and Almeida to dispose of the transformers, *did not challenge any factual statement* in the presentence report, but amounted instead to an attempt to dispute the legal import of the jury verdicts. Absent a claim of factual inaccuracy, the Rule 32(c)(3)(D) requirement simply is not implicated. *United States v. Pellerito,* 918 F.2d 999, 1003 (1st Cir.1990) (Rule 32(c)(3)(D) not triggered by claim of legal error); *United States v. Reese,* 998 F.2d 1275, 1285 (5th Cir.1993) (Rule 32(c)(3)(D) not triggered by claim of error in assigning role in offense).[5]

## III

### CONCLUSION

For the foregoing reasons, the judgment of conviction and sentence is affirmed.

***Affirmed.***

---

3. Even assuming, *arguendo,* that the present claim had been preserved, we note that six circuits have determined that "aberrant behavior" is not established unless the defendant is a first-time offender and the crime was "a spontaneous and seemingly thoughtless act rather than one which was the result of substantial planning." *United States v. Carey,* 895 F.2d 318, 324–25 (7th Cir.1990). *See United States v. Premachandra,* 32 F.3d 346, 349 (8th Cir.1994); *United States v. Duerson,* 25 F.3d 376, 380 (6th Cir.1994); *United States v. Marcello,* 13 F.3d 752, 761 (3d Cir. 1994); *United States v. Williams,* 974 F.2d 25, 26 (5th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1320, 122 L.Ed.2d 706 (1993); *United States v. Glick,* 946 F.2d 335, 338 (4th Cir.1991). The Ninth and Tenth Circuits apply a somewhat different test, permitting a downward departure for "aberrant behavior" based on a finding that the offense did not comport with the defendant's "normal character ... [and] is a complete shock

and out of character." *United States v. Tsosie,* 14 F.3d 1438, 1441 (10th Cir.1994); *United States v. Fairless,* 975 F.2d 664, 666–67 (9th Cir.1992). In all events, given the circumstances we discern no plain error.

4. A role-in-the-offense determination presents a mixed question of law and fact, *United States v. Carrozza,* 4 F.3d 70, 89 (1st Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1644, 128 L.Ed.2d 365 (1994), which we review only for clear error, by reason of its fact-bound nature, *United States v. Rodriguez Alvarado,* 985 F.2d 15, 19 (1st Cir. 1993).

5. *United States v. Rosado–Ubiera,* 947 F.2d 644, 645–46 (2d Cir.1991), is not to the contrary. There the district court had refused to resolve both a factual dispute, as to the defendant's conduct, and the defendant's role in the offense.