64 F.3d 654
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Appellee,
v.
Fidelina SANTOS-FRIAS, Defendant, Appellant.
United States of America, Appellee,
v.
Francisca De Leon-Pena, Defendant, Appellant.
United States of America, Appellee,
v.
Francisco Matta-Garcia, Defendant, Appellant.
 Nos. 94-1942, 94-1943, 94-2065.
 United States Court of Appeals,
First Circuit.
 Aug. 25, 1995.
 
 Rafael Gonzalez Velez for appellant Santos-Frias.
 Jose R. Gaztambide for appellant De Leon-Pena.
 Luis A. Plaza for appellant Matta-Garcia.
 W. Stephen Muldrow, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Jos e A. Quiles-Espinosa, Senior Litigation Counsel, Mar ia Pab on, Assistant United States Attorney, Jacabed Rodr iguez, Assistant United States Attorney, and Sonia Torres, Assistant United States Attorney, were on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants Fidelina Santos-Frias ("Santos"), Francisco Matta-Garcia ("Matta"), and Francisca De Leon-Pena ("De Leon") appeal the judgments of conviction and sentence entered against them following their consolidated jury trial on cocaine charges in the United States District Court for the District of Puerto Rico. We affirm the district court judgments.
 
 
 2
 * BACKGROUND
 
 
 3
 We recount the evidence in the light most favorable to the verdicts. United States v. Tuesta-Toro, 29 F.3d 771, 773 (1st Cir.1994), cert. denied, 115 S. Ct. 947 (1995). Santos, Matta, De Leon, and Rosalia Sanchez-Vencosme ("Sanchez") resided in the same apartment building in Rio Piedras, Puerto Rico. Sanchez and Santos shared an apartment. On May 8, 1993, Santos and De Leon invited Sanchez to another apartment, shared by Matta and De Leon, and offered to pay Sanchez $1,700 for carrying a kilogram of cocaine to New York. Sanchez declined the offer at the time, but later relented.
 
 
 4
 The next day, May 9, De Leon helped Santos and Sanchez strap cocaine-laden girdles to their bodies. Matta then drove Santos and Sanchez to the airport while De Leon remained at her apartment. En route to the airport, Matta gave Santos the money with which to purchase two plane tickets. Upon their arrival at the airport, Santos and Sanchez proceeded to the ticket counter while Matta remained at a discreet distance. Santos, who was carrying two kilograms of cocaine, purchased the tickets, proceeded toward the departure gate and passed through the security checkpoint without incident. Sanchez, carrying one kilogram, was detained when the checkpoint security alarm sounded as she passed through. After the cocaine was discovered on her person, Sanchez was placed under arrest and charged with possessing cocaine with intent to distribute. She later pled guilty and testified against appellants Santos, Matta and De Leon.
 
 II
 DISCUSSION
 A. Opening Statement
 
 5
 Count one charged appellants with conspiring to possess cocaine with intent to distribute, from on or about December 1, 1992, to and including May 9, 1993. In the government's opening statement, the prosecutor described various criminal activities, as alleged in the indictment, which would be established during trial. At side-bar immediately after the opening statement, defense counsel moved for mistrial based on unfair prejudice allegedly resulting from the prosecutor's references to defendants' pre-May 8 criminal activities since Sanchez ---- the only government witness to the alleged conspiracy ---- had not become involved until May 8. Following an evidentiary proffer by the government, the district court ruled that the alleged conspiracy spanned only the two-day period ---- May 8 through May 9, 1993 ---- during which Sanchez participated. The court then denied the motions for mistrial, on the ground that its curative jury instructions would afford adequate protection against unfair prejudice.
 
 
 6
 The district court gave a curative instruction immediately before Sanchez testified, emphatically directing the jury to disregard all prosecutorial references to occurrences during the period December 12th, 1992, through May 7th, 1993. At the same time the court reiterated its admonition ---- initially stated during its preliminary jury instructions ---- that statements made by counsel are not evidence. During its final charge the court said:
 
 
 7
 I caution you and instruct you that ... any comments that the government made in [its] opening arguments with respect to anything that might have happened prior to May 8th is to be totally and completely disregarded and ignored by you. The evidence in this case ... starts on May the 8th, and goes over into May the 9th. That's all you're concerned with. Anything that you might recall or anything that was said that went before May the 8th, is completely irrelevant to you, and may not be considered by you.
 
 
 8
 Appellants contend that the district court erred in denying their motion for mistrial, as no curative instruction could overcome the unfair impression conveyed by the prosecutor's statement that appellants were involved in a more extensive conspiracy than the government would establish at trial. Appellants assert that "a curative instruction would not suffice" because the jury clearly understood the prosecutor and, coming from the government, the statement would be given weight "notwithstanding any instructions from the court."
 
 
 9
 Although the assurances that the government would establish criminal activities predating the commencement of any provable conspiracy posed a considerable potential for unfair prejudice to appellants, any actual prejudice was self-inflicted by their failure to mount a pretrial challenge to the indictment, based on overbreadth, see Fed. R. Crim. P. 12(b)(2), and their failure to request the district court in advance to limit prosecutorial references in the government's opening statement to the temporal scope of the provable conspiracy.[1] Furthermore, at no time did the defense suggest to the district court that the opening statement involved intentional misconduct by the prosecutor.
 
 
 10
 Even under a "plain error" analysis, appellants' argument fails. The denial of a timely motion for mistrial is reviewed for manifest abuse of discretion. United States v. Romero-Carrion, 54 F.3d 15, 17 (1st Cir.1995); United States v. Pierro, 32 F.3d 611, 617 (1st Cir.1994), cert. denied, 115 S. Ct. 919 (1995). And absent a clear showing of prejudice by appellants the denial must be upheld. United States v. Hahn, 17 F.3d 502, 508 (1st Cir.1994) (citing United States v. Sclamo, 578 F.2d 888, 890-91 (1st Cir.1978)).
 
 
 11
 We evaluate the potential for prejudice by assessing the likely impact of the challenged conduct upon the jury as viewed in the context of the entire trial, including prosecutorial culpability, the nature and timeliness of the defendant's response and any curative measures undertaken by the trial court. See United States v. Moreno, 991 F.2d 943, 947-49 (1st Cir.) (evaluating government's opening and closing statements), cert. denied, 114 S. Ct. 457 (1993); see also United States v. Maccini, 721 F.2d 840, 842-43 (1st Cir.1983). Ultimately, of course, the acid test is whether the defendant received a fair trial. Moreno, 991 F.2d at 949.
 
 
 12
 A careful review of the record demonstrates that any potential prejudice to appellants was averted by the district court's firm curative instructions and by its ruling limiting the temporal reach of the government's evidence at trial to the two-day period ---- May 8 and 9, 1993. Nor have appellants suggested a sufficient basis for their conjecture that the jury failed to follow the specific curative instructions repeatedly given by the district court. See United States v. Paiva, 892 F.2d 148, 160 (1st Cir.1989) (court normally presumes that jury follows its instructions).
 
 B. Closing Argument
 
 13
 On appeal, Matta and De Leon contend for the first time that the government improperly vouched for Sanchez's credibility during closing argument when the prosecutor stated, "She's not a perjurer. She's going to do time. She's not going to walk. She is truthful." The appellate brief jointly filed by Matta and De Leon devotes a single conclusory sentence to their vouching claim: "The government also vouched for its principal witness, Rosalia Sanchez-Bencosme."[2] Their failure to raise the claim below and to present developed argumentation on appeal constituted a clear waiver. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 (1990).
 
 C. Motions for Judgments of Acquittal
 
 14
 All three appellants claim there was insufficient evidence to support their convictions, hence the district court erred in denying their motions for judgments of acquittal. They base their claim on the ground that the only testimony supporting their convictions was provided by Sanchez and it was not credible. See supra pt. II.B. Appellants argue that Sanchez demonstrated her lack of credibility by giving false information in her earlier dealings with the United States Drug Enforcement Administration, and by entering into a sham marriage in order to obtain immigrant status.
 
 
 15
 It is well settled that all credibility questions must be resolved in favor of the verdict when reviewing a trial court's denial of a motion for judgment of acquittal. Hahn, 17 F.3d at 506 (citing United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir.1991)). The conclusory assertions supporting the instant claim afford no basis for departing from the general rule that credibility determinations are for the factfinder. Id. A careful record review demonstrates that defense counsel, during cross-examination and in their closing arguments, ably exposed the very serious credibility problems with Sanchez's testimony. The record likewise reveals ample evidence ---- crediting Sanchez's testimony as we must, see id. ---- to establish beyond a reasonable doubt each essential element of the crimes charged against Santos, Matta and De Leon.
 
 D. Sentencing
 
 16
 Santos and De Leon did not object to their presentence reports. Thus, their undeveloped sentencing claims, broached for the first time on appeal, were not preserved. See United States v. Ocasio-Rivera, 991 F.2d 1, 3 & n.3 (1st Cir.1993). Indeed, the appellate brief submitted by Santos does not explicitly present a sentencing claim. Her reliance on a perfunctory announcement of joinder under Fed. R. App. P. 3(b) is inadequate to entitle her to "piggyback" on the sentencing claims advanced by her codefendants. See supra note 2. As for De Leon, the argumentation in the joint brief submitted by her and Matta merely rests on the bald statement that she should have been granted a downward departure, though she purports to adopt Matta's arguments by reference. See id. Since neither De Leon nor Santos discussed their own sentencing claims, nor their respective grounds for either a downward departure or adjustment, we decline to consider their claims. "[T]he settled appellate rule [is] that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." Zannino, 895 F.2d at 17.
 
 
 17
 Although Matta has presented a developed claim for a downward adjustment, assertedly based on his "minor role" in the cocaine transaction, see U.S.S.G. Sec. 3B1.2(b), it is frivolous. The presentence report not only includes no information which would warrant a finding that Matta played a minor role in the offense but it recommends a four-level upward adjustment for Matta's superviso ry role in the offense. See id. Sec. 3B1.1(a). Even though the district court rejected this recommendation, the uncontroverted evidence that Matta provided the money used to purchase the airline tickets for Santos and Sanchez, then remained in the background as his "mules" proceeded to the airport security checkpoint, left little room for a finding that Matta played a minor role in the offense.
 
 
 18
 The contention that Matta was entitled to a downward departure for "aberrant behavior" fares no better. There is no basis for concluding that the sentencing court did not understand that a downward departure based on aberrant behavior may be permissible in an appropriate case. The district court simply refused to depart on the grounds presented by Matta. See United States v. Catucci, 55 F.3d 15, 19 n.3 (1st Cir.1995). Consequently, we lack jurisdiction to consider the departure claim. See United States v. Ruiz, 905 F.2d 499, 508-09 (1st Cir.1990).
 
 
 19
 Affirmed.
 
 
 
 [1]
 At bottom, of course, the challenge to the temporal breadth of the alleged conspiracy described in the opening statement represented a challenge to the indictment. "Defenses and objections based on defects in the indictment" are to be raised prior to trial, Fed. R. Crim. P. 12(b)(2), and are deemed waived pursuant to Fed. R. Crim. P. 12(f) unless the court affords relief for "cause shown." As appellants failed to avail themselves of a full and fair opportunity to mount a pretrial challenge to the indictment, and now offer no justification for their failure, the present claim is deemed waived. See United States v. Rodriguez, 738 F.2d 13, 15 (1st Cir.1984) (motion to dismiss indictment during trial untimely under Rule 12(b)); Flying Eagles Publications, Inc. v. United States, 273 F.2d 799, 803 (1st Cir.1960) (declining to address merits of nonjurisdictional challenge to indictment at close of evidence because "under Criminal Rule 12(b)(2) it should have been asserted by motion before trial."); see also United States v. Smith, 866 F.2d 1092, 1098 (9th Cir.1989) (finding that defendants waive all but jurisdictional claims of error regarding an indictment unless they raise their claims prior to trial)
 
 
 [2]
 Santos would be permitted to adopt the arguments presented by Matta and De Leon, see Fed. R. App. P. 3(b), but only to the extent that the adopted arguments themselves are apposite and adequately developed. Cf. United States v. David, 940 F.2d 722, 737 (1st Cir.1991) (rejecting attempt to adopt materially different arguments by reference), cert. denied, 504 U.S. 955 (1992); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.) (similar), cert. denied, 494 U.S. 1082 (1990)