# United States Court of Appeals
## For the First Circuit

No. 03-2645

UNITED STATES OF AMERICA,

Appellee,

v.

BRUCE SCOTT ZISKIND,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Michael J. Traft, with whom Carney & Bassil, P.C., was on brief, for appellant.
Kirby A. Heller, Attorney, United States Department of Justice, with whom Michael J. Sullivan, United States Attorney, and Fred M. Wyshak, Jr., Assistant United States Attorney, were on brief, for appellee.

June 20,2007

**HOWARD**, <u>Circuit Judge</u>.  Bruce Scott Ziskind was indicted in 2002 of one count of conspiracy to steal goods traveling in interstate commerce and two counts of receiving stolen interstate shipments of goods.  18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 659 (receipt of stolen goods).  A jury convicted Ziskind on all counts of the indictment, and he was sentenced to 63 months of imprisonment on each count, to be served concurrently.  Ziskind appeals his conviction and sentence.[1]

In early 1995, Ziskind and his associate, John "Mick" Murray, devised a scheme to steal computer equipment from local United Parcel Service (UPS) shipments.  They recruited, Daniel Gilday, a UPS worker, and told him to steal computer equipment and pass it along to Ziskind.  Ziskind owned an electronics company through which he sold the stolen merchandise and shared a portion of the profits with Murray and Gilday.  On several occasions, Ziskind searched some UPS trucks for merchandise himself and assisted Gilday in recruiting other UPS drivers for the scheme.

Eventually, Gilday became disenchanted with his cut of the profits, so he found another buyer, Robert Powell, who paid better.  On occasion, Gilday still provided goods to Ziskind and Murray.  Soon, however, Ziskind noticed that Gilday's supply had diminished and complained to Gilday about it.

---

[1] We recently rejected another appeal from Ziskind in a criminal prosecution involving a different theft conspiracy.  <u>See</u> <u>United States</u> v. <u>Ziskind</u>, 471 U.S. 266 (1st Cir. 2006).

-2-

In January 1997, Gilday stole a shipment of semiconductors that the United States Navy was returning to Alamo Computer in Massachusetts and delivered them to Murray. Ziskind initially claimed that the semiconductors were worthless but later learned that they were very valuable. This led to a dispute between Ziskind and Gilday, which Ziskind resolved by paying Gilday $5,000. In May 1997, Gilday stole a shipment of video cards from a company called Osicom Technology and, after unsuccessfully trying to sell them to Powell, sold them to Ziskind. Soon after this transaction, Gilday was arrested. Ziskind and Murray were also subsequently arrested and indicted for their involvement in the scheme.

At trial, Ziskind conceded that he had joined the conspiracy with Murray and Gilday in 1995, but left the conspiracy a few months later, and therefore had nothing to do with the 1997 thefts. Since the charges against Ziskind had a five-year statute of limitations, see 18 U.S.C. § 3282, he asserted that he was entitled to an acquittal because the statute of limitations had run.

On appeal, Ziskind's only challenge to his conviction concerns the admission of a stipulation that his co-conspirator, John Murray, had previously pleaded guilty to the counts of the indictment with which he was being charged. Ziskind argues, on appeal, that the admission of this stipulation violated his Sixth Amendment right to confront adverse witnesses under Crawford v.

Washington, 541 U.S. 36 (2004). The government argues that Ziskind waived this argument by agreeing to the stipulation or, at a minimum, forfeited it by not raising a Crawford-type claim below.[2] See United States v. Olano, 507 U.S. 725, 733 (1993) (distinguishing between waiver and forfeiture). Ziskind claims that he fully preserved the argument. To put this standard of review issue into context, some additional background is required.

Ten days before trial, the government filed a motion in limine to admit Murray's plea allocution into evidence. The district court held a hearing on the motion, at which time Ziskind objected to the introduction of the allocution. He claimed that its admission presented "a Bruton situation" because the allocution could implicate him in the crime. See United States v. Smith, 46 F.3d 1223, 1227 (1st Cir. 1995) ("Bruton error occurs where the codefendant's hearsay statement expressly implicates the defendant [in the crime] . . . ." (internal quotation marks omitted)).

The district court found Ziskind's objection well-taken and proposed to the parties that, instead of introducing the allocution, they stipulate that Murray had previously pleaded guilty to the counts of the indictment with which Ziskind was charged. The court also promised to instruct the jury that the

---

[2]We say "Crawford-type" claim because Crawford had not yet been decided when Ziskind was tried. This circumstance, however, did not relieve Ziskind of raising an objection on the grounds later embraced by Crawford. See United States v. Luciano, 414 F.3d 174, 178 (1st Cir. 2005); see also United States v. Hadley, 431 F.3d 484, 498 n.8 (6th Cir. 2005).

stipulation was not evidence that Ziskind had participated in the conspiracy. Ziskind's counsel stated that "he probably would not have an objection to that" but "that he would want to see the wording." Later in the hearing, Ziskind's counsel reiterated that he would "have no objection as long as Mr. Ziskind's name is kept out," but that he would "object to . . . the use of his name as being involved in the conspiracy." Thus, counsel again aired his Bruton objection.

At the end of the government's case, it introduced the stipulation, which stated, "The parties hereby stipulate and agree that on July 1, 2002 John Murray, AKA "Mick" Murray pled guilty to his participation in the conspiracy alleged in Count 1 and to the thefts alleged in Counts Two and Three." The stipulation was signed by Ziskind and his counsel, and Ziskind did not object upon its admission. The district court did not offer a limiting instruction concerning the use of the stipulation at this juncture.

After the jury retired to deliberate, it asked to see the stipulation. At that time, the district court consulted with the parties, and Ziskind's counsel restated his concern about the Bruton problem, asking that, if the stipulation went to the jury, the jury also be told that the stipulation does not prove Ziskind's involvement in the conspiracy. The court questioned whether there had ever been an objection to the stipulation, to which Ziskind's counsel replied, "I know I argued to you [that] this is Bruton." The court then recalled that objection, and Ziskind proceeded to

try to broaden it by claiming that the objection was not limited to Bruton. Rather, according to Ziskind's counsel, the objection was to the admission of the stipulation in its entirety because he did not have the chance to cross-examine Murray about the plea. Before providing a copy of the stipulation to the jury, the court provided a limiting instruction stating that the stipulation could be used as evidence that a conspiracy existed in 1997 but not that Ziskind had been involved.

The government's contention that Ziskind waived his Crawford objection by agreeing to the stipulation poses a difficult question. On the one hand, no contemporaneous objection was lodged when the signed stipulation was admitted into evidence. On the other hand, throughout the proceeding, Ziskind claimed that the admission of the stipulation presented a possible Bruton problem to the extent that it implicated Ziskind in the conspiracy. Waiver, which ordinarily precludes any appellate consideration of an issue, requires a showing that the party intentionally relinquished or abandoned an argument. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). The record can be read to support Ziskind's contention that he did not agree, without reservation, to the admissibility of the stipulation. Thus, a reasonable argument could be made, that Ziskind at least preserved an objection to the stipulation under Bruton and did not intentionally relinquish any appellate argument concerning the stipulation.

But, regardless of whether a <u>Bruton</u> objection was preserved, Ziskind has not argued <u>Bruton</u> on appeal. Instead, he has argued that the admission of the stipulation was unconstitutional under <u>Crawford</u> because it permitted the introduction of testimonial hearsay. It is settled law in this circuit "that an objection on one ground does not preserve appellate review of a different ground." <u>United States</u> v. <u>Mercado</u>, 412 F.3d 243, 247 (1st Cir. 2005). No <u>Crawford</u>-type argument was made either during the pre-trial hearing when the stipulation procedure was discussed or when the government offered the stipulation at the close of its case. Indeed, at the pretrial hearing, Ziskind expressly stated that he had no objection to the admission of the stipulation so long as his name did not appear and he signed the stipulation that was eventually read to the jury. Ziskind did make something resembling a <u>Crawford</u>-type argument at the end of the discussion about the jury's request to see the stipulation; but at that point, it was too late. <u>See</u> <u>United States</u> v. <u>DeLeon</u>, 187 F.3d 60, 65 (1st Cir. 1999) (concluding that objection to admission of evidence is not preserved for appellate review where the objection is not made until after the introduction of the evidence); <u>United States</u> v. <u>Tse</u>, 135 F.3d 200, 209 (1st Cir. 1998) (similar). Thus, Ziskind's <u>Crawford</u> argument is forfeited, and we therefore review it only for plain error.

To warrant reversal of his conviction, Ziskind must show: (1) the occurrence of an error; (2) that the error is obvious or

clear under current law; (3) that the error affected his substantial rights; and (4) that it seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. See United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006). As we explain below, Ziskind is not entitled to relief under this standard of review.

In Crawford, the Supreme Court overruled prior precedent to hold that the Confrontation Clause of the Sixth Amendment prohibits the government from introducing testimonial hearsay against a defendant in a criminal trial. Crawford, however, was not decided until after Ziskind's trial, and the district court recognized, in an order rejecting Ziskind's post-trial motion to stay the execution of his sentence, that if Crawford had been the governing law at trial, it would have ruled the stipulation inadmissible. On appeal, the government has not argued that the stipulation was admissible under Crawford. We therefore assume that Ziskind has met the first two prongs of the plain error standard. See Johnson v. United States, 520 U.S. 461, 468 (1997) (holding that error is plain if the law is clear at the time of direct appellate review, even though governing law was unclear at time of trial).

We turn then to whether the admission of the stipulation affected Ziskind's substantial rights. Under this standard, Ziskind has to show that "the error . . . affected the outcome of the district court proceedings." United States v. Cotton, 535 U.S.

-8-

625, 632 (2002). Ziskind contends that the admission of the stipulation was critical evidence in the case because the government used it to undermine his claim that he had withdrawn from the conspiracy before 1997. In this regard, he relies on a portion of the government's closing argument, stating:

> You also know [the conspiracy] continued because, as you know from the stipulation, Mick Murray pleaded guilty to stealing both the Navy shipment and the Osicom shipment in 1997, Counts 2 and 3 of this Indictment. Now, as you know, the fact that Murray pleaded guilty to stealing these packages or being involved in the thefts doesn't mean that the defendant was. But it does tell you that Murray was -- that these packages were stolen as part of a conspiracy involving Mick Murray and that therefore they were stolen as part of a conspiracy involving Mick Murray. And because Murray was an original member of this conspiracy, you know the conspiracy was continuing in 1997.

The government's use of the stipulation was not sufficiently important for us to conclude that it likely affected the outcome of the trial. Ziskind did not seriously contest Murray's involvement in the conspiracy from 1995 to 1997, which included the Navy and Osicom robberies. His defense was that, while these robberies took place as part of a conspiracy that existed in 1997, he was not then involved. The government relied on the stipulation only to argue that a conspiracy existed in 1997, involving these robberies. It emphasized, however, that the stipulation was not evidence that Ziskind was involved in these crimes. The limited significance of the stipulation was also

stressed by the district court in its supplemental jury instructions. The court told the jury that it could "use [the stipulation] as evidence, first, that a conspiracy existed; and, second, that the thefts there were alleged in Counts 2 and 3 took place. But [it cannot] use it to show somehow that Mr. Ziskind was involved." See Richardson v. Marsh, 481 U.S. 200, 206 (1987) (stating that there is an "almost invariable assumption of the law that jurors follow their instructions"). Thus, the jury was well aware that it could not consider the stipulation in deciding the central issue -- whether Ziskind was involved in the conspiracy through 1997.

There was, however, ample evidence demonstrating that Ziskind was involved through 1997. The government presented testimony from Gilday directly implicating Ziskind in the 1997 robberies and this testimony was partially corroborated by Powell. There was also documentary evidence of telephone calls between Gilday and Ziskind in 1997. And Michael Servideo, another UPS driver, testified that Ziskind tried to recruit him into the conspiracy in 1997 by offering him $2,000.

In sum, the stipulation was used for a limited purpose on a point that Ziskind did not seriously contest. The government and the district court both advised the jury on the limited purpose for which the stipulation could be used, and the government presented a strong case demonstrating that Ziskind participated in the conspiracy through 1997. Under these circumstances, we conclude

-10-

that Ziskind has not shown that the introduction of the stipulation affected his substantial rights, and therefore there is no basis for reversing his conviction.  Cf. United States v. Reifler, 446 F.3d 65, 87 (2d Cir. 2006) (finding Crawford error in the introduction of co-conspirator's plea allocution harmless beyond a reasonable doubt in a RICO prosecution where it was used only to show the existence of an enterprise, not the defendant's participation).

We turn now to Ziskind's challenges to his sentence. Ziskind was sentenced under Sentencing Guidelines in effect in November 1998 and before United States v. Booker, 543 U.S. 220 (2005), rendered the Guidelines advisory.  Ziskind's presentence report (PSR) recommended a base offense level of four, increased by thirteen levels for losses from relevant conduct beginning in 1995. The PSR also recommended a three-level enhancement based on Ziskind's leadership role in the conspiracy, see U.S.S.G. 3B1.1(b), and a four-level enhancement for receiving stolen property while in that business, see id. § 2B1.1(b)(1)(B).   Under the PSR calculation, Ziskind's guideline range was 63 to 78 months of imprisonment.

Ziskind raised several objections to the PSR, including the calculation of the amount of loss, the role-in-the-offense enhancement, and the "being in the business of receiving stolen property" enhancement.  The court reduced the loss calculation to provide for only a ten-level enhancement.  In so doing, it counted

-11-

losses from the two 1997 thefts and one theft that occurred in 1996.  The court also rejected the challenge to the "in the business" enhancement and increased the role-in-the-offense enhancement to four levels based on the view that Ziskind was extensively involved in managing the conspiracy and that the conspiracy involved more than five participants.  The resulting guideline sentencing range (GSR) was 51 to 63 months.

The district court sentenced Ziskind to 63 months of imprisonment on each count, to be served concurrently.  The court explained its sentencing rationale as follows:

> I am going to impose the high end of the Guidelines.  And, in fact, I gave very serious consideration to whether or not I should exceed them.  But I have given fairly detailed consideration to evaluation of loss at the front end -- that is, in the calculation of the relevant total offense level.  And my concern was that I not enervate that kind of evaluation by a separate back-door evaluation of the scope of the offense.  So, I have chosen not to depart here, although there is in this case a fairly substantial amount of evidence suggesting that the loss that I've calculated does not completely capture all of the defendant's activities.  I have also considered the question of this stale criminal record and determined that it would be inappropriate for me to import the prior convictions that are outside of the range that the Guidelines take into consideration into my evaluation of whether or not to depart here.  Again, those are close questions in this case, but not ones that have ultimately caused me to depart.

Ziskind's first challenge to his sentence is to the district court's inclusion of the 1996 theft in its loss calculation on the ground that this conduct took place outside the

-12-

five-year statute of limitations for the charged offenses. In making this argument, Ziskind relies on the Supreme Court's decisions in <u>Stogner</u> v. <u>California</u>, 539 U.S. 607 (2003), and <u>Booker</u>. We review this challenge to the guideline calculation de novo as it presents a question of law. See <u>United States</u> v. <u>Talladino</u>, 38 F.3d 1255, 1263 (1st Cir. 1994).

<u>Stogner</u> is irrelevant. In that case, the Court held that a California statute that restarted the limitations period for sex-related child abuse offenses to one year from the time that the crime was reported to police was unconstitutionally ex post facto. <u>Stogner</u> does not concern a court's ability to consider relevant conduct occurring outside the statute of limitations period for sentencing the defendant for a crime that took place within the statute of limitations period, and we have been shown no case suggesting its relevance. Moreover, consideration of conduct taking place outside the limitations period for sentencing purposes has been held not to be punishment and thus ex post facto concerns are inapposite. See <u>United States</u> v. <u>Watts</u>, 519 U.S. 148, 155 (1997) ("Consideration of information about the defendant's character and conduct at sentencing does not result in punishment for any offense other than the one of which the defendant was convicted.")

It was well-established prior to <u>Booker</u> that a district court may consider relevant conduct outside of the statute of limitations period in fashioning the defendant's sentence. <u>See</u>,

-13-

e.g., United States v. Williams, 217 F.3d 751, 754 (9th Cir. 2000); United States v. Stephens, 198 F.3d 389, 390-91 (3d Cir. 1999); United States v. Valenti, 121 F.3d 327, 334 (7th Cir. 1997); United States v. Behr, 93 F.3d 764, 765-66 (11th Cir. 1996) (per curiam); United States v. Silkowski, 32 F.3d 682, 688 (2d Cir. 1994); United States v. Neighbors, 23 F.3d 306, 311 (10th Cir. 1994); United States v. Pierce, 17 F.3d 146, 150 (6th Cir. 1994). Ziskind contends, however, that Booker undermines this rule because the jury did not find that he actually committed the conduct outside of the statute of limitations period which the court used to increase his sentence.

This argument misconstrues the holding in Booker. Booker did not hold that the Sixth Amendment prohibits judicial factfinding; it held only that the Sixth Amendment is violated by a mandatory guideline sentence scheme predicated on such factual determinations. See United States v. De Los Santos, 420 F.3d 10, 14 (1st Cir. 2005); United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005). Thus, we have consistently rejected the argument that judicial factfinding, by itself, violates Booker. E.g., United States v. Bermudez, 407 F.3d 536, 545 (1st Cir. 2005); United States v. Lewis, 406 F.3d 11, 21 (1st Cir. 2005). And consistent with this view, courts of appeals after Booker have continued to uphold the district court's reliance on relevant conduct outside of the limitations period in setting a sentence. See United States v. Hamaker, 455 F.3d 1316, 1336 (11th Cir. 2006);

-14-

United States v. Greer, 175 Fed. Appx. 95-96 (7th Cir. 2006).

Accordingly, Ziskind's argument that the district court erred in considering relevant conduct outside the statute of limitations period in fashioning his sentence fails.

Ziskind next challenges the district court's imposition of a four-level role-in-the-offense enhancement. He argues that this enhancement was inappropriately applied because his involvement in the conspiracy was limited to identifying "what sort of stolen goods could be readily marketed." We review the imposition of a role-in-the-offense enhancement for clear error. See United States v. Rodriguez Alvarado, 985 F.2d 15, 19-20 (1st Cir. 1993).

Section 3B1.1(a) of the Guidelines prescribes offense-level enhancements based upon the size of the criminal organization and the defendant's role in the offense. A four-level enhancement applies where the defendant engages in a leadership or organizational role for criminal activity that involved five or more people. Id. The Guidelines provide a nonexclusive list of factors to guide the determination of whether a defendant held a leadership or organizational role.[3] Id.

---

[3]These include: the exercise of decision making authority; the nature of the participation in the commission of the offense; the claimed right to a larger share of the fruits of the crime; the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others. Id. at cmt. 4.

The record easily supports the district court's decision to apply the four-level enhancement. There was evidence that Ziskind conceived of the scheme; actively recruited participants; exercised control over the operation by deciding what goods to steal; and controlled the payout of money earned by the scheme to other participants. See generally United States v. Monteiro, 417 F.3d 208, 212-13 (1st Cir. 2005).

Next, Ziskind argues that he is entitled to remand for resentencing under Booker because he was sentenced pursuant to the pre-Booker mandatory guideline regime. Ziskind concedes that he did not preserve this argument, and therefore review is limited to plain error. Under plain error review, a defendant sentenced pre-Booker is entitled to resentencing if he can demonstrate "a reasonable probability that he would have received a more lenient sentence under an advisory guideline regime." United States v. Martins, 413 F.3d 139, 154 (1st Cir. 2005).

Ziskind cannot make the necessary showing. The district court sentenced him at the high end of the applicable GSR, a fact that indicates a remote possibility of a below guideline sentence on remand. See United States v. McLean, 409 F.3d 492, 505 (1st Cir. 2005). Moreover, at sentencing, the district court stated that it "gave very serious consideration" to imposing a sentence above the GSR. Addressing Ziskind's motion to stay the execution of sentence, the district court also explicitly stated that "the sentence imposed under the mandatory guidelines scheme would in all

-16-

likelihood be the sentence [it] would impose under an advisory guidelines sentencing scheme." On this record, there is no basis to conclude that Ziskind would be sentenced more leniently on remand.

Finally, Ziskind contends that the district court erred in sentencing him to 63 months' imprisonment on the conspiracy count because that sentence exceeded the 60-month statutory maximum. See 18 U.S.C. §371. The government concedes this error, and we therefore vacate the sentence on the conspiracy count.

For the reasons stated above, we **vacate** the sentence on the conspiracy count (Count 1) and **remand** for the imposition of a 60-month sentence on this count. The remainder of the judgment is **affirmed**.

**So ordered**.